FERDINAND SCHNEEWIND v. THE CITY OF NILES.

*Municipal corporations—Taxation—Limitation.*

1. The word "raised," as used in a city charter which provides
   that the amount that may be voted or raised in any one year
   under provisions for the levy and collection of taxes and the
   borrowing of moneys shall not exceed a certain percentage of
   the assessed valuation, means "raised by taxation;" citing
   *Board of Supervisors v. Warren,* 98 Mich. 146.
2. Section 30 of the charter of the city of Niles (Act No. 414, Local
   Acts of 1893) limits the amount of taxes which the council is
   authorized to levy and collect in any one year to defray the
   expenses of the city to one and one-half per cent. of the valu-
   ation of the real and personal property within the limits of
   the city, and, after authorizing the voting by the freeholders
   of the city of an additional sum by way of tax or loan, provides
   that the amount that may be voted or raised in any year under
   the provisions of the section shall not exceed two per cent. of
   the assessed valuation of the property in the city, as shown
   by the last preceding tax roll made therein.   And it is held
   that the aggregate of the loan authorized by the freeholders
   and the amount ordered to be assessed by the council in any
   one year cannot exceed said two per cent.

Appeal from Berrien.   (Buck, J., presiding.)   Argued
October 30, 1894.   Decided December 22, 1894.

Bill to enjoin the defendant from issuing or negotiating
certain waterworks bonds.   Complainant appeals.   Decree
reversed, and one entered as prayed.   The facts are stated
in the opinion.

*George A. Lambert* and *Edward Bacon,* for complainant.

*William J. Gilbert* and *George S. Clapp,* for defendant.

LONG, J.   On August 28, 1893, the common council of
the city of Niles passed the following resolution:

"*Resolved,* that a meeting of the freeholders of the city

of Niles be called to meet at the common council rooms on September 18, 1893, polls to open at 3 p. m. and close at 8 p. m., to vote upon the following proposition: That the city council be authorized to borrow, on the faith and credit of the city of Niles, a sum not exceeding $32,-000, to be used and expended for the purpose of constructing a new system of waterworks, to be owned and controlled by the city, for the extinguishment of fires and for other purposes."

This resolution was voted upon at the meeting so called, and was by the mayor, who presided, declared carried by a vote of 200 in favor, and 42 against.

This bill is filed for the purpose of enjoining and restraining the city of Niles, its officers, agents, servants, and attorneys, from issuing, signing, negotiating, or selling any of such bonds of said city in the sum of $32,000, or any part thereof. The complainant is a resident freeholder and tax-payer of the city, and sets out in his bill that such proceedings are void, and that the amount authorized to be raised is in excess of the amount authorized under the charter of the city, but that the common council is now about to issue said bonds and sell them to third parties. It is further alleged that the assessed valuation of the property in the city, as shown by the last preceding tax roll,—that is, the tax roll for the year 1893,—is the sum of $1,697,855; that at a meeting of the common council held on the 19th day of June, 1893, it voted to raise, levy, and collect, by taxation of the property in said city, the amount of 1 per cent. of such valuation, and in pursuance of such vote the common council did thereafter, and before the said 28th day of August, cause such amount of 1 per cent. of said assessed valuation to be duly assessed and levied against such property in said city, and is now collecting such amount of taxes of said property; and that the vote of the freeholders authorizing the borrowing of said $32,000 is void, as being in excess of the power of such freeholders. Many other reasons are set up in the

bill why the action of the council and of the freeholders is void, and why the council should be restrained, but which it will not be necessary to notice, from the view we take of the principal question.   The city answered the bill, proofs were taken, and the case fully submitted to the court below on pleadings and proofs.   The bill was dismissed.   Complainant appeals.

No questions of fact are raised in reference to this main issue; but it is contended that under the charter the council, by the vote of the freeholders, had power and authority to raise 2 per cent. over and above the amount of the 1 per cent. already voted and raised for other purposes. The only provisions of the charter which, it is claimed, confer the power, are as follows:

"Sec. 30. The common council shall have power and authority to levy and collect such amount of taxes on all real and personal property within the limits of said city as they may deem necessary to defray the expenses thereof, not to exceed one and one-half per cent. on the valuation thereof, exclusive of the cost of collecting the same, in any one year, and shall have power and authority, at any time previous to the collection of the city tax for any one year, to borrow a sum not exceeding one-third of the amount of taxes levied for city purposes that year, and to pledge the faith and credit of the city therefor; but they shall have no power and authority to levy, assess, or collect any additional tax the same year, nor to contract debts, incur liabilities, or make expenditures in any one year which shall exceed the revenue for the same year, unless first authorized so to do by a majority vote of the freeholders of said city at a public meeting thereof, called and conducted as hereinafter provided.   Such meeting may be called by the common council by a resolution appointing a time and place in said city for holding the same, and setting forth the purpose of the proposed expenditure, the amount proposed to be raised, and whether by tax or loan.   Such resolution shall be passed, and published in one of the newspapers of the city, and copies thereof posted in five of the most public places in each ward of the city, at least 14 days before the meeting at which the vote is to be taken.

The mayor of the city, or, in his absence, the recorder, shall preside at such meeting, and none but freeholders of the city shall be allowed to vote. Whenever authorized by a majority vote of a freeholders' meeting called and conducted as aforesaid, it shall be lawful for the common council to levy, assess, and collect such additional tax, or to borrow on the faith and credit of said city such sums of money, as may be determined at such meeting, and for that purpose to issue the bonds of the city, signed by the mayor and countersigned by the recorder, in such form as the common council may direct, and payable at such time, and bearing such interest, not exceeding the rate of seven per cent. per annum, as the common council may determine. Such bonds, when authorized and executed as aforesaid, may be sold by direction of the common council, but not below their par value: *Provided,* that not more than two such meetings may be called in any one year, the second of which shall be called only by a vote of three-fourths of the members-elect of the common council. The amount that may be voted or raised in any year under the provisions of this section shall not exceed two per cent. of the assessed valuation of the property in the city, as shown by the last preceding tax roll made therein."

"Sec. 36. All moneys and taxes raised, loaned, or appropriated for the purposes of any particular fund shall be paid in and credited to such fund, and shall be applied to the purposes for which such moneys were raised and received, and to none other; nor shall the moneys belonging to one fund be transferred to another fund, or be applied to any purpose for which such other fund is constituted, except when there shall be a surplus in any general fund at the close of any fiscal year. In such case, the surplus may be transferred to the sinking fund, should there be a deficiency in that fund; otherwise the council may apply such surplus as they shall deem proper."

The classification of the general funds is in section 31 of the charter, the seventh fund being "water fund, for defraying the expenses of the public water service," and the eleventh fund being "interest and sinking fund, for the payment of the public debt of the city and the interest thereon." The learned court below filed a written opinion, in which he said:

"A question which, to the mind of the court, presents greater difficulty in its solution than any of those which have so far been discussed, arises from the peculiar phraseology of the concluding portion of section 30 of the city charter,"—quoting from section 30, as above.

The court then continues:

"It appears by the proofs taken in the case that the city council had already voted to raise an amount equal to 1 per cent. of the assessed valuation of the property in the city for defraying the ordinary city expenses, and, if this sum of $32,000 were to be added to the sum raised by taxation, these two sums would amount to considerably more than 2 per cent. of the valuation of the property in the city. The city attorney, who drafted the section of the charter under consideration, contends that by this language it was intended that there should not be voted or raised by a vote of the freeholders of the city a sum equal to more than 2 per cent. of the taxable property in the city in any one year. I was, however, very strongly impressed on the argument of this case with the view that the legislative intent must be held to be that no amount which should exceed 2 per cent. of the valuation of the property in the city should be raised by tax or loan in any one year, but on further examination and reflection I am led to doubt the correctness of this view. The fact that the city council could, without a vote of the freeholders, levy a tax equal to one and one-half per cent. of the assessed valuation of the property in the city, certainly lends some support to the theory of counsel for defendant, and after a careful examination of this section I am led to the conclusion that the word 'or' in the phrase 'voted or raised' should be read as though it were 'and,' and that this prohibition was intended to apply only to such sums as should be voted by the freeholders at a public meeting, as provided in those parts of the section immediately preceding the part under consideration."

If we concede the rule of interpretation of this statute to be as liberal as claimed by the trial court, yet we must hold that it is not open to the construction placed upon it. It is plain that there could not be borrowed a greater sum than could be raised in any one year by taxation.

Unless this be so, there can be found no limitation in the charter upon the power of the freeholders. It is evident that it was the legislative intent to place a limit upon the amount that the freeholders could vote, as well as upon the amount that the council could vote. The limitation is placed upon the council of one and one-half per cent., and in the same section it is provided that "the amount that may be voted or raised in any year under the provisions of this section shall not exceed 2 per cent. of the assessed valuation of the property in the city, as shown by the last preceding tax roll made therein." If, as contended by the court below, the word "or" should be construed as "and," the evident meaning would then be that the aggregate of all debt and tax to be put on the roll in any year should not exceed the 2 per cent., as it is provided that that must be the limit "under the provisions of this section." The word "raised" means raised by taxation. *Board of Supervisors v. Warren*, 98 Mich. 146. It seems clear to us that no amount of authorities could make the meaning clearer than the language of the section itself makes it.

We are satisfied that the council has no power to issue the bonds provided for, and the decree of the court below must be reversed, and a decree entered here in favor of complainant, as prayed in the bill.

The other Justices concurred.