HENRY CASTER, Appellee, v. R. McCLELLAN, ET AL., Ap-
pellants.

**Mines and mining:** LABORERS' LIENS: CONSTRUCTION OF STATUTES.
Code Section 3105 does not give laborers or miners a lien
upon the mining property of the owner in favor of the em-
ployés of an operating lessee of the mine.

*Appeal from Appanoose District Court.*— HON. ROBERT
SLOAN, Judge.

THURSDAY, DECEMBER 13, 1906.

ACTION in equity to recover on an account for labor performed in and about the operation of a coal mine, and to establish and enforce a miner's lien. The fact situation is sufficiently stated as follows: The defendant Royal Coal Company owns a coal mine in Appanoose county, and the defendant McClellan is the owner of all the capital stock of said company. Prior to August 1, 1903, the mine had been opened and worked for some years, and it was equipped with the machinery and apparatus usual to the operation of a mine. On the date mentioned the mine and its equipment was leased to the defendant E. H. Smith, who took possession and proceeded to operate. By the terms of the lease, in lieu of rent or royalty, Smith was to deliver all coal taken out of the mine to McClellan, and was to receive therefor each month in cash the sum of $1.90 per ton for each and every ton delivered. Smith was to pay all expenses incident to the operation of the mine. On January 16, 1904, Smith quit operations and abandoned the mine. In the meantime he had been paid for all the coal delivered by him at the stipulated price. Plaintiff and some twenty other persons were employed by Smith as mine laborers to work in connection with the operation of the mine, and at the time the mine closed down in January there was due to each of them on such account a sum as stated in the petition. Each of the other persons assigned his claim and right of lien to plaintiff, and this suit is brought to recover the aggregate sum and to enforce the right of lien. By the decree judgment was awarded against Smith for the sum demanded, and a lien was established against the property of the Royal Coal Company and a special execution ordered. The defendants McClellan and Royal Coal Company appeal.— *Reversed.*

*Howell & Elgin,* for appellants.

*Fee & Fee,* for appellee.

BISHOP, J.— The appealing defendants do not question the correctness of the judgment against Smith. And they concede that the labor performed by plaintiff and his assignors was under contract of employment with Smith, and done in connection with the operation of the mine in question. Two matters of complete defense are relied upon: (1) That the lien statute (Code, section 3105) does not provide for a lien upon the mining property of an owner in favor of the employés of an operating lessee. (2) The lien statute is void, as in conflict with the Constitution. In view of the construction we feel constrained to put upon the provisions of the statute, it will not be necessary to consider the constitutional question. The statute upon which the action is based is Code, section 3105, and reads as follows: " Every laborer or miner who shall perform labor in opening, developing or operating any coal mine shall have a lien on all the property of the person, firm or corporation owning or operating such mine, and used in the construction or operation thereof, including real estate, and personal property, for the value of such labor, to be secured and enforced as mechanics' liens are." And in view of the issue, it is manifest that, when we have determined upon the scope and meaning to be given such statute, we shall have arrived at a determination of the controverted rights of these parties. As it appears to us, the question involved must depend for its solution upon the construction proper to be put upon the word " or," as used in the expression " owner or operator," as it occurs in the statute. If the word shall be given its natural and ordinary meaning as a disjunctive particle, then it would seem clear that the lien provided for was intended to attach only to the property of the employing party, whether he be owner or one operating the mine as lessee. This must be true because the word " or " marks an alternative and generally corresponds in meaning to the word " either." It signifies that one of two things may be done, but not both. Webster's Dictionary; Century Dictionary;

6 Words & Phrases, 5009.  If, on the other hand, the word shall be construed as having by intention the meaning of the conjunctive word " and "— and this is the logic of the argument of counsel for appellee — then, of course, the lien would attach to the respective property interests of both owner and operator.

According to a well-understood canon of construction, it is the duty of the courts to ascertain and give effect to the real meaning intended to be expressed by a legislative act called in question where such is reasonably possible.  To this end it not infrequently becomes necessary to give to a word a meaning other or different than that ordinarily assigned to it in common speech.  Thus the word " or " has been construed to mean " and," and vice versa.  And the power of the courts to do this in a proper case has never been questioned.  But a proper case can arise only when from a reading of the act as a whole it becomes apparent that the word used was mistakenly used.  All the cases on the subject proceed on this theory.  *State v. Myers,* 10 Iowa, 448;  *Eisfeld v. Kenworthy,* 50 Iowa, 389;  *Williams v. Poor,* 65 Iowa, 410.  The general rule is, however, that words must be construed according to their natural meaning.  And in the case of a statute which imposes a liability which, but therefor, would have no existence, a strict construction must be given not only to the particular words employed, but to the act generally.  28 Am. & Eng. Ency. 668, and cases cited in the note.  A conclusion for mistake will not therefore be warranted, unless required of necessity by the context of the act, taken as a whole, to dispel doubt or uncertainty as to the legislative intention, or to make consistent that which otherwise would be inconsistent, or to avoid an unreasonable or absurd result.  As giving further support to this view, see *Ayers v. Chicago, etc., Co.,* 187 Ill. 42 (58 N. E. 318);  *Kanne v. Railway,* 33 Minn. 419 (23 N. W. 854);  *Warren Co. v. Booth,* 81 Miss. 267 (32 South. 1000);  *Winterfield v. Stauss,* 24 Wis. 394;  *Burgett v. Both-*

*well,* 86 Ind. 149; *State v. Bulling,* 100 Mo. 87 (12 S. W.
356). From this it follows as a necessary corollary that
where no uncertainty of meaning is introduced into the act
by the words employed, and especially if it can be given rea-
sonable enforcement by following the literal reading, there
can be no justification for a change by judicial construction.
*Robinson v. Railway,* 105 Cal. 526 (38 Pac. 94, 722, 28 L.
R. A. 773); *Com. v. Kilgore,* 82 Pa. 396; *Miller v. Jones,*
80 Ala. 89; *Brown v. Rushing,* 70 Ark. 111 (66 S. W.
442); *Schneewind v. Niles,* 103 Mich. 301 (61 N. W. 498).

Now, stated broadly, the statute immediately in ques-
tion gives to every mine employé a lien for his wages on the
mine property of his employer, and it is immaterial whether
such employer is owner of the mine or operates the same
under a lease or license. And to the strict wording of the
statute we think that there is possible neither the element of
uncertainty, nor of inconsistency, nor of chance for unrea-
sonable result. Accordingly, there is no ground upon which
to base an interference with the wording of the statute by
the courts; and this especially, as to substitute the word
" and " for the word " or," thereby giving a right of lien
on the properties of both owner and operator, would be to
authorize the forcible taking of one man's property to pay the
debt of another. The holding in *Mitchell v. Burwell,* 110
Iowa, 10, cited and relied upon by counsel for appellee, is
not in conflict with the conclusion above expressed. The
precise question now before us was not there discussed or
decided. The holding went no further than to declare for
a lien in favor of a miner upon a mining property to the
extent of the value of the improvements made on the mine
by the operating lessee thereof. The case is not an argu-
ment for a further extension of the liability of the owner.
We conclude that the statute in question did not authorize
a lien in favor of plaintiff against the property of the ap-
pealing defendants. And we cannot by judicial construction
extend the force of the enactment beyond the field marked

out by the language employed. If needful for the protection of miners that there should be an extension of the lien right, it is for the Legislature to make provision therefor in clear and unmistakable terms.

It follows that that portion of the decree appealed from must be, and it is, *reversed.*