## OHIO FUEL SUPPLY CO. et al. v. PAXTON et al.

(District Court, S. D. Ohio, E. D.    September 25, 1924.)

No. 266.

1. **Statutes ⬤⟿197—"Or" in statute marks an alternative.**

The word "or," used in a statute, is a disjunctive particle that marks an alternative (citing Words and Phrases, First Series, "Or").

2. **Taxation ⬤⟿607—Complainant, given the right by statute to one "or" another remedy, may choose between them.**

Gen. Code Ohio § 12075, providing that certain courts may enjoin the illegal levy "or" collection of taxes and assessments, gives the taxpayer a choice of remedies either to enjoin an illegal levy or the collection of such tax, and his failure to bring suit to enjoin the levy does not estop him to maintain a suit to enjoin collection of the tax.

3. **Taxation ⬤⟿611(3)—Failure to object to assessment or levy of illegal tax does not estop to resist collection.**

Mere silence or forbearance on the part of one whose property is about to be taxed or assessed, even if the tax or assessment will operate beneficially to him, will not estop him from resisting collection by all legal and equitable remedies, if such tax be levied or assessment imposed without authority of law or under an unconstitutional enactment, at least where the improvement which gives rise to the tax or assessment is not made on his premises.

In Equity.  Suit by the Ohio Fuel Supply Company and the Ohio Fuel Gas Company against Hugh Paxton and. others.  Decree for complainants.

Eagleson & Laylin, of Columbus, Ohio, for plaintiffs.

Joseph O. Fritz, Pros. Atty., of Wooster, Ohio, for defendant Russell.

SATER, District Judge.  The question for decision is raised by the answer of the treasurer of Wayne county.  The correctness of the conclusion reached in City Railway Co. v. Beard (D. C.) 283 Fed. 313, 20 Ohio L. R. 213, is not questioned.  The situation of the parties is the same as in that case, excepting as to the difference in the valuation fixed on plaintiffs' property with reference to its actual value and the amount of tax assessed against the same, and excepting that the Beard Case was disposed of on the pleadings, whereas in the instant case the facts material to a decision are established by certain admissions in the answer, a failure to deny some of the averments in the bill, and an agreed statement of facts.  The similarity is such (the illegal and fraudulent character of the system of valuing property for taxation being manifest) that the issue now under consideration could properly have been decided in the Beard Case, had

it been tendered. The facts and claims, in so far as they need be specifically stated, on which the issue arises, are these:

The tax commission fixed a tentative valuation on the plaintiffs' property, exclusive of real estate not used in their operations. On their application a hearing was had, in consequence of which such valuation was slightly reduced. A further reduction followed as the result of a request for a second hearing, following which the tax commission refused to modify its conclusion or the value as then fixed. The justiciable stage was then reached. The plaintiffs protested against the valuation as fixed (which was higher than that on some, at least, of other similar corporations), on the ground that it was excessive and discriminatory. The plaintiffs do not ask to be relieved from the payment of taxes justly chargeable against their property, but only those in excess thereof which were imposed in violation of constitutional provisions. After the commission's final refusal to make a further reduction in the valuation of plaintiffs' property, that body proceeded to apportion among the 38 counties in which such property is located the amount taxable in each. The sum apportioned to Wayne county for taxation was $1,750,600, but the actual value of such property in that county was but $1,506,763.

The plaintiffs made no claim to the taxing authorities of the county of the overvaluation of their property, and took no action to secure a reappraisement of property in that county, or in any of its taxing subdivisions, the real estate in all of which is valued for taxing purposes at only 60 per cent. of its actual worth, while the plaintiffs' property was valued by the tax commission at 116 per cent. of its real value. That the appraised value of real estate in the county was but 60 per cent. of its true value was known to the county auditor and county commissioners, or in the exercise of due diligence could have been ascertained by them, and was a fact of common knowledge in the county at the time the tax values of real estate were required by law to be determined. The plaintiffs' property, as valued by the commission and so apportioned to the county, was then by the proper local tax authorities further apportioned among the several appropriate taxing districts, and taxes were assessed against it by the budget commission at the same rate as imposed on other property within the respective subdivisions to meet their operating expenses for the ensuing year and to provide sinking funds to care for their bonded indebtedness. The taxes so levied were then placed upon the tax duplicate. The plaintiffs and the taxing authorities were charged with notice of the provisions of the statutes relating to the imposition of taxes. Bonds of some or all of such subdivisions, with interest, fell due within the year for which the taxes were levied, and contracts were made in the conduct of their business in reliance on the receipt of the taxes levied.

When the Ohio Fuel Supply Company paid the first half of the year's tax assessed against the plaintiffs' property, it protested to the county treasurer against its taxable valuation and gave him notice of the intention to enjoin the collection of the residue of the taxes charged; but no other complaint touching the valuation and taxation of such property was at any time made by the plaintiffs, or either of them. The defendant claims that, if the temporary injunction against the collection of so much of the taxes as are wrongfully charged be made permanent, such municipalities and boards will not be able to meet their financial obligations, in consequence of which inconvenience, hardship, and loss will result to themselves and their creditors equal to that which plaintiffs would suffer should they be required to pay the tax. Defendant avers a lack of diligence on the part of plaintiffs in asserting their rights and pursuing their remedy, and contends that, had they enjoined the tax levy, they would have incurred no greater expense than in the present suit, and would have enabled the taxing authorities to recast their levy and, by making it slightly higher, to have insured themselves respectively funds sufficient to meet their liabilities. The defendant further charges that the plaintiffs, instead of enjoining the collection of the excess taxes, should have enjoined the levy of the same, and that by reason of their silence and inaction they are guilty of laches and are estopped from obtaining equitable relief.

The claim that the taxing officers, had they been notified of plaintiffs' intention to test the correctness of the valuation of their property and its excessive character, would have increased the rate in order to insure adequate funds to meet all legitimate demands for the ensuing year, cannot, for want of proof, be accepted as an established fact. The opportunity would have been presented to pursue that course had the taxing boards elected so to do. That the defendant treasurer, at the close of nine months from the filing of the bill, interposed

an answer disputing the soundness of plaintiffs' contention, suggests that the issue now under consideration might then have been tendered.

[1, 2] The first three sections of the Act of April 10, 1856 (53 O. L. 178), later became sections 5848–5851 of the Revised Statutes, and are now known as sections 12075–12078, Ohio G. C., and are shown in the margin.[1] This action is brought under section 12075. The question for decision is: Must a party, under circumstances such as are disclosed in the instant case, who knows or has reasonable cause to believe his property is excessively valued for taxation and is about to be illegally assessed, enjoin the levy, and, if he fails to do so, does he thereby lose his right to enjoin the collection of the taxes illegally charged against such property?

Section 12075 gives to taxpayers a choice of remedies. He may elect either to enjoin an illegal tax levy or he may enjoin the collection of such tax. He may not, however, do both. This appears from the use of the word "or," occurring in the statute, a definition of which is thus given in 29 Cyc. 1502: "The word 'or' is a disjunctive particle that marks an alternative, generally corresponding to 'either,' as 'either this or that,' a connective that marks an alternative, as, 'you may read or you may write—that is, you may do one of the things at your pleasure, but not both.'" For like definitions, see 21 Am. & Eng. Ency. Law (2d Ed.) 936; Caster v. McClellan, 132 Iowa, 502, 504, 109 N.

W. 1020; 6 Adjudged Words and Phrases, First Series, 5009.

[3] It is clear the plaintiffs can maintain their action unless by their conduct they have estopped themselves from so doing. It will be noted that the remedy afforded by the statute runs against both illegal taxes and illegal assessments. Cases assailing assessments are therefore as pertinent as those attacking taxes. In the well-considered opinion of Stephan v. Daniels, 27 Ohio St. 527, is found an intelligent analysis and extended discussion of the act of 1856. Under the remedial provisions of that law, enacted to obviate the difficulties of the taxpayer in obtaining relief from illegal taxes and assessments, it was said the complaining party, to obtain an injunction, need not aver and show, as under the ordinary rules of equity, that great and irreparable injury is about to be done for which he has no adequate remedy at law, *but only that the tax is illegal* which is about to be assessed or collected, citing Steese v. Oviatt, 24 Ohio St. 253, and that, in an action to recover back an illegal tax, two things must be shown: (1) That the tax is illegal; and (2) *that it has been collected* by those authorized by law to make collection of taxes. Daniels and others, to prevent their property from being sold for unpaid taxes, were compelled to pay involuntarily what they contended was, and what proved to be, an illegal street assessment. They had not endeavored to enjoin the improvement at its inception or as it progressed. It was contended that they were not entitled to recover back the money paid for the reason the assessment was fair and reasonable, that they had knowledge of the improvement as it progressed, that they stood by without objection until the improvement was completed, and that it had greatly enhanced the value of their property on which the assessment was levied. The answer to the argument thus made is found in the fifth paragraph of the syllabus, which is the law of the case and is as follows:

"An answer, which avers that D. had actual knowledge, *or had the means of knowing*, of all the steps taken by the city in making the improvement, and made no objection, that the lot is greatly benefited thereby, that the assessment only covered actual cost, which was the lowest price the work could be done for, and the amount assessed was no more than was properly chargeable on said lot, does not constitute a bar to an action to recover back such void assessment."

---

[1]Sec. 12075. Common pleas and superior courts may enjoin the illegal levy or collection of taxes and assessments, and entertain actions to recover them back when collected, without regard to the amount thereof, but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected.

Sec. 12076. Actions to enjoin the illegal levy of taxes and assessments must be brought against the corporations or persons for whose use and benefit the levy is made. If the levy would go upon the county duplicate, the county auditor must be joined in the action.

Sec. 12077. Actions to enjoin the collection of taxes and assessments must be brought against the officer whose duty it is to collect them. Actions to recover back taxes and assessments, must be brought against the officer who made the collection, or, if he be dead, against his personal representative. When they were not collected on the county duplicate, the corporation which made the levy must be joined in the action.

Sec. 12078. If the plaintiff in an action to enjoin the collection of taxes or assessments admits that a part thereof was legally levied, he first must pay or tender the sum admitted to be due. When an injunction is allowed, bond must be given as in other cases. The injunction shall be a justification of the officers charged with the collection of such taxes or assessments for not collecting them.

In Counterman v. Dublin Township, 38 Ohio St. 515, the action was brought to enjoin the tax levied for the payment of bonds issued for the building of a railroad. The charge was that the whole of the tax was levied in violation of constitutional provisions. In the instant case the complaint is against only so much of the tax as was thus levied. The defense in the Counterman Case was that the plaintiffs took no action to enjoin the building of the road, the issue of the bonds, or the disbursement of the money received from their sale, although they had full knowledge of all such matters from the inception of the proceedings looking towards the construction of the road, and that therefore they were estopped to maintain their action. The syllabus of the case is as follows:

"The act of April 10, 1880, 'to authorize certain townships to build railroads, and to lease and operate the same' (77 Ohio L. 165), being unconstitutional (Wyscaver v. Atkinson, 37 Ohio St. 80), a taxpayer may maintain an action (Rev. Stats. §§ 5848–5851) to restrain the collection of a tax levied for the payment of bonds issued under the act; and the fact that the bonds were issued and the money arising from the sale thereof was expended by the trustees, with the knowledge of the plaintiff, in the construction of a railroad in the township, which enhanced the value of the property therein, including that of the plaintiff, and was otherwise useful to the citizens of the township generally, and that the plaintiff did not commence an action to restrain the issue or negotiation of the bonds or prosecution of the work, is not sufficient to estop the plaintiff from maintaining such action to restrain the enforcement of such tax."

In deciding the case the court directed attention to the act of 1856, approved the case of Stephan v. Daniels, supra, and pertinently said:

"An act of the general assembly in conflict with the constitution, is a mere nullity, and no one is estopped to assert its invalidity. Such is the general rule. And this is a matter to be determined by the court as a judicial question. South Ottawa v. Perkins, 94 U. S. 200, 267; State v. Railway Co., 31 Ark. 701; State v. Railway Co., 74 Mo. 163; Post v. Supervisors, 105 U. S. 667. But parties may, under special circumstances, be precluded from availing themselves of such infirmity. Where one actively intervenes to secure the passage of an act, or the expenditure of money in pursuance of it, or where one, with knowledge

that improvements are in progress on his lands, under authority of a legislative enactment, permits the work to proceed without objection, there is much reason for saying he should not be permitted to plead that such statute is unconstitutional. Ferguson v. Landram, 1 Bush, 548, s. c., 5 Bush, 230, approved in State v. Mitchell, 31 Ohio St. 592, 610. And see cases cited by counsel and Daniels v. Tearney, 102 U. S. 415, 421. But the same reason does not apply where there is only inaction, and 'the duty to speak ought to be very imperative to make mere silence operate as an estoppel.' Cooley on Taxation, 573. If we should hold the plaintiffs to be estopped on the facts here set forth, we would, in effect, require every property owner to determine, at his peril, in advance of the expenditure of any money under the authority of the act, whether such act was constitutional, and incur the necessary expense of obtaining a judicial determination of the question. And he would thus become not only the guardian of his own property rights in that regard, but charged with the duty of controlling the conduct of the officers provided by law for the township. We are clear that the doctrine of estoppel can never be rightly applied to the facts here presented."

The answer in Lewis v. Symmes, 61 Ohio St. 471, 56 N. E. 194, 76 Am. St. Rep. 428, averred that the defendants proceeded in reliance upon the statute to carry out its provisions in making the improvement, the assessment for which the plaintiffs sought to enjoin; that it was not only of general benefit to the public, but of special benefit to the plaintiffs; that plaintiffs knew of the intention to make such improvement and assess a portion of its cost against their property; that they took no steps to prevent the improvement, other than protests from some of them; that, relying upon their acquiescence, bonds were issued; that the county was without means for the full payment thereof, except by reason of the assessment made; and that therefore they should not be heard to object to the validity of the assessment by which it was expected the money would be realized for the payment of the bonds. The answer of the court to the defense thus made is thus expressed in the second paragraph of the syllabus:

"The owner of lands within an assessment district defined in an unconstitutional act for the improvement of a public highway, not having promoted the making of the improvement, may enjoin the collection of an assessment to pay for such improvement in

a suit for that purpose begun when an attempt is made to enforce the assessment. He is not required to begin such suit at an earlier day, though he may know of the improvement and of the intention to make the assessment. Columbus v. Agler, 44 Ohio St. 485, followed."

In City of Columbus v. Agler, 44 Ohio St. 485, 8 N. E. 302, it was specifically found that the plaintiff did not petition for the improvement made, that she remained silent until it was completed and bonds of the city for the payment of the same had been negotiated, that she had knowledge that the improvement was being made at the time thereof, and that her property was benefited by the improvement to the extent of $4 per foot front. She in no manner promoted the improvement. It was held there was nothing in the case to distinguish it from the decision in Wright v. Thomas, 26 Ohio St. 346, and it was therefore ruled that she was not called upon to do anything until steps were taken to make the assessment upon her property. Her action was to enjoin the collection.

The rule in Ohio is so well settled that a more extended citation of cases is not deemed necessary. Reduced to its last analysis, the charge is the plaintiffs remained silent and inactive when the local taxing authorities were determining the tax levy and until the payment of the first half of the year's taxes. Mere silence or forbearance on the part of one whose property is about to be taxed or assessed, even if the result accruing from the tax or assessment will operate beneficially to him, will not estop him from resisting collection by all legal and equitable remedies, if such tax be levied or assessment imposed without authority of law or under an unconstitutional enactment (Andrew v. Settle, 5 Ohio N. P. 394), unless, perchance, the improvement which gives rise to the tax or assessment is made on his premises (Kellogg v. Ely, 15 Ohio St. 64, explanations of which case are found in Wright v. Thomas, 26 Ohio St. 346, Columbus v. Agler, 44 Ohio St. 485, and Tone v. Columbus, 39 Ohio St. at page 307, 48 Am. Rep. 438). The mere fact that a person knows that work on an improvement is progressing, for which an unconstitutional assessment is to be made or tax to be imposed, will not estop him from objecting to its validity after the work is done. Cooley, Taxation (3d Ed.) 1519; Wright v. Thomas, 26 Ohio St. 346; Lewis v. Symmes, supra. The same rule applies to one who remains inactive but knows that an illegal tax is about to be charged against his property. The excess tax assessed against the plaintiffs' property imposed an unjust burden and conferred no benefit.

The Ohio statutes give no assurance to taxing authorities that they will receive the full amount of tax assessed in favor of the subdivisions which they respectively represent. All taxes and assessments in this state are levied and assessed by officers and boards subject to the test of legality by the courts, and, when found illegal, they will be enjoined. The legal effect of section 12075 is to protect the rights of the citizens in every case, as completely as if the right of appeal were given from the taxing officers to the courts direct. Hagerty v. Huddleston, 60 Ohio St. at pages 165, 166, 53 N. E. 960. When an assessment for a street improvement is made, or a tax is levied, whether the same be payable in installments or not, larger than allowed by law, the taxpayer is permitted to pay a sum equal to that which could have been lawfully assessed or levied and may enjoin the collection of the remainder. Cincinnati v. James, 55 Ohio St. 180, 44 N. E. 925; Groesbeck v. Cincinnati, 51 Ohio St. 375, 37 N. E. 707. The tax charged on the duplicate in favor of any taxing subdivision may also be reduced by a recovery back of illegal taxes which are not voluntarily paid (Stephan v. Daniels, supra; section 12077), or by a refunder (section 12078—1).

There is a limited number of reported cases in which injunctive relief has been sought against the levy of taxes or assessments. See, for instance, Jones v. Davis, 35 Ohio St. 474, Hagerty v. Huddleston, 60 Ohio St. 149, 53 N. E. 960, and T. & O. C. Railway Co. v. Commissioners, 15 Ohio Cir. Ct. R. 236. The usual remedy pursued, however, is to enjoin the collection of the tax or assessment claimed to be illegal. There is a multiplicity of cases found in the reports of the Supreme, appellate, and nisi prius courts in which jurisdiction has been entertained to enjoin the collection of taxes. A few of those found in the reports of the state Supreme Court and the federal courts are: Upington v. Oviatt, 24 Ohio St. 232; Steese v. Oviatt, 24 Ohio St. 248; Gerke v. Purcell, 25 Ohio St. 229; Stephan v. Daniels, 27 Ohio St. 527; Sebastian v. Ohio Candle Co., 27 Ohio St. 459; Bolton v. Cleveland, 35 Ohio St. 319; Counterman v. Dublin Township, 38 Ohio St. 515; Wagoner v. Loomis, 37 Ohio St. 571; Railroad Co. v. Commissioners, 48 Ohio St. 249, 27 N. E. 548; City of Cincinnati v. James, 55

Ohio St. 180, 44 N. E. 925; Markle v. Newton, 64 Ohio St. 496, 60 N. E. 619; Manning v. Lakewood, 94 Ohio St. 85, 113 N. E. 661; O'Brien v. Hospital Association, 96 Ohio St. 1, 116 N. E. 975, L. R. A. 1917F, 741; Norwood v. Baker, 172 U. S. 269, 19 Sup. St. 187, 43 L. Ed. 443; Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903; Meyers v Shields (C. C.) 61 Fed. 713; Grether v Wright, 75 Fed. 742, 23 C. C. A. 498 (C. C. A. 6); Lander v. Mercantile Nat. Bank, 118 Fed. 785, 55 C. C. A. 523 (C. C. A. 6).

It may be the reason why so few actions have been instituted to enjoin the illegal levy of a tax or assessment is that a suit of that kind must run against the corporation or person for whose use and benefit the tax or assessment is made. Section 12076. That section requires that the counties, municipal corporations, townships, boards of education, and other taxing authorities, or the officers of all such entities, as the rules of pleading may require, must be made defendants. In many instances this would entail quite a burden on the plaintiff. Under section 12077, a suit brought to enjoin the collection of taxes or assessments need be brought against the officer only whose duty it is to collect. The remedy thus afforded is simple.

From the foregoing it follows that the plaintiffs in this action are not estopped to maintain their action. An order may be taken accordingly.

