Harold Tessler, J.
In this article 78 (CPLR) proceeding petitioners seek a judgment (1) enjoining the Board of Estimate and Mayor from taking any steps under the Park and Recreation *651 Land Acquisition Act (Conservation Law, art. 16-C) in connection with the condemnation of the lands that are the subject of park layout Map No. 4236; (2) annulling the determinations of the City Planning Commission, Director of the Budget, Board of Estimate and Council of the City of New York approving said Map No. 4236 affecting the subject property; (3) ordering the Board of Estimate and City Planning Commission to demap the said lands so as to remove the proposed acquisition for alleged park purposes; (4) annulling the determinations of the State Council of Parks and Conservation Commissioner approving said application; (5) prohibiting the State Comptroller from auditing the application of the City of New York for State aid for an extension to Flushing Meadow Park and from issuing a warrant for the moneys requested, and (6) declaring that the subject lands do not qualify for State aid pursuant to the Park and Recreation Land Acquisition Act.
The respondents move to dismiss the petition for legal insufficiency.
The petitioners are owners of real property in the Borough of Queens situated within one or the other of two parcels comprising an area of 23.3 acres and 44.3 acres, respectively. Petitioners bring this proceeding on behalf of themselves and all other owners of real property in the two aforesaid parcels similarly situated with regard to the questions of law and fact presented herein. Certain of the respondents have proposed that the city acquire all the land in the two parcels for an extension to Flushing Meadow Park. The respondent Board of Estimate, after recommendation and approval of the City Planning Commission and the Assistant and Acting Director of the Budget of the City of New York on behalf of the respondent Director of the Budget, approved the subject map change on September 26,1963.
The report of the Assistant and Acting Director of the Budget states that: “These park additions will be acquired pursuant to Chapter 523 of the Laws of 1960 which relate to the acquisition of certain parks and park additions. Under this Chapter, the cost of such acquistion is borne to the extent of % of the cost by the State and to the extent of % by the City.”
Both the City Planning Commission and the Board of Estimate conducted hearings prior to making their respective determinations, at which hearings the petitioners stated their objections.
On • December 17, 1963 respondent Council of the City of New York, as governing body of the city, approved the acquisi *652 tian of the aforesaid two parcels for park additions pursuant to the Park and Recreation Land Acquisition Act. The resolution of the City Council reads as follows: “Resolved, That pursuant to the provisions of Article 16c of the State Conservation Law and in particular Section 880 of the Conservation Law, the Council hereby approves the acquisition of the two privately owned park additions laid out on Map No. 4236 as approved by the City Planning Commission on April 17, 1963, and by the Board of Estimate on September 26, 1963, so that The City of New York may apply for State aid in the acquisition of these park lands as provided by the State law.”
The request of respondent Mayor Wagner to the Council for approval stated that the purpose was to obtain State aid pursuant to the Park and Recreation Land Acquisition Act. The report of the Committee on Finance of the City Council also states that the acquisition of the two additions was proposed pursuant to the said act.
Prior to the said approval of the Council and on September 30.1963 respondent Wagner, as Mayor of the City of New York, signed an application for a grant in State aid pursuant to the Park and Recreation Land Acquisition Act for the acquisition of the subject property. On October 29, 1963, the Long Island State Park Commission, by its president, indorsed the aforesaid application and added certain information thereto. On October 31.1963 respondent State Council of Parks made a determination recommending the acquisition of the land pursuant to the aforesaid act. The Council did not hold hearings prior to its approval, but did accept a memorandum submitted on behalf of the petitioners and others similarly situated. On November 6, 1963 respondent Wilm as State Conservation Commissioner approved the application. The application, together with the recommendation and approval of the State Council of Parks and the Conservation Commissioner has been transported to the office of respondent Levitt, Comptroller of the State of New York, with the request that he audit the application and issue a warrant for disbursement of the amount requested in the application to the City of New York. The application is now before the Comptroller.
Pursuant to the Park and Recreation Land Acquisition Act (Conservation Law, §§ 875-885), certain lands may be acquired for park conservation and other recreation purposes. Section 879 provides that the sum of $17,000,000 is allocated for State aid in the amount of 75% of the cost of acquisition of land for parks by the City of New York or by improvement districts therein. The manner of acquisition is provided by subdivision *653 3 of section 880. This section provides that: “ Lands approved by the governing body of a municipality, and approved by the commissioner on the recommendation of the council * * * for acquisition by such municipality with the aid funds made available by this act for municipal park purposes, shall be acquired by purchase or agreement or by condemnation in the manner provided by law for the acquisition of lands for public purposes by such municipality. The state’s share of the cost of such lands shall be paid on the audit and warrant of the state comptroller on the certificate of the commissioner”. Section 881 is entitled “ Standards for acquisition ”. Pursuant to subdivision 2 of that section certain requirements and standards of eligibility are delineated: ‘ ‘ Lands acquired for state or municipal parks shall consist of predominantly open or natural lands, including lands under water or forested lands, in or near urban or suburban areas, or suitable to serve the recreation needs of the expanding populations of growing metropolitan regions, or desirable to preserve the scenery or natural resources thereof.”
The petitioners’ basic contention is that their lands and the lands of those persons similarly situated are not predominantly open or natural and therefore do not meet the standards for acquisition pursuant to the act. They claim that the subject lands are fully developed and utilized for commercial and industrial purposes and consequently their acceptance and approval for State aid, pursuant to the above-mentioned act, constitutes an illegal, arbitrary and capricious determination by the State respondents. They further claim that the description of the lands on the application and indorsements and recommendations thereof were inaccurate, incomplete and deceptive and in part the product of a willful material alteration since at some time after the application was signed by the respondent Wagner, the number of buildings stated to be on the subject lands was reduced from 80 to 14. Accordingly, it is claimed that the record now before the Comptroller cannot form the proper factual basis for a determination by him' and that even without regard to the inaccuracies and alterations in the application, the Comptroller has no jurisdiction to approve the application and issue a warrant for the amount requested because as a matter of law the lands in question are not predominantly open or natural and do not otherwise qualify for State aid pursuant to the provisions of the act.
The final contention is that the approval of the application and disbursal of State moneys to the City of New York under the circumstances herein would constitute a waste of taxpayers’ *654 money and impairment of the obligation of the contract made by the State with those who had purchased bonds pursuant to the act.
As to the City of New York respondents, petitioners appear to claim that the actions of the latter, namely the map change, the application to the State for funds and such other steps taken in contemplation of the acquisition of petitioners ’ property for a public park, should be reviewed and rendered null and void because the proposed taking is an integral and irrevocable part of the city’s obtaining State aid; that since the city is not entitled to such aid, as say the petitioners, it follows that its actions are illegal and should be annulled.
Petitioners do not contend that the city, if it so desired, could not legally acquire their property for park purposes with its own funds. Indeed, section 381 of the New York City Charter gives the city such power. Nor do the petitioners contend that the procedures mandated by section 199 of the New York City Charter for the change in the city map were.not followed by the Board of Estimate and the City Planning Commission. The claim is made, however, that because the map change was made upon the possibly erroneous assumption that the acquisition of the lands would qualify for State aid, that all steps taken to further the acquisition of the lands are illegal.
The respondents contend (1) that all of the actions of the respondents connected with the City of New York are proper and valid, in accordance with law and in part are legislative in character and not reviewable by the courts; (2) that the application of the city for State assistance is an independent and separate act and has no bearing on the city’s admitted right to effect a map change for a public use or to acquire the petitioners’ property for a public use, and (3) that petitioners stand in the position of mere taxpayers and as such have suffered no actionable wrong and have no legal capacity to sue.
Petitioners concede that the City of New York has the right to acquire their property — or any property for that matter— provided such acquisition is to be for a public use. Petitioners further concede that the proposed taking here is for a public park, ergo a public use.
The petition fails to state a cause of action for any actionable wrong committed 'by any of the respondents connected with the City of New York. All of the actions taken by them were authorized by law. The city has not yet condemned any of the lands involved. If the city’s application is ultimately denied because of the failure of the subject property to qualify under the State Conservation Law, the city may well have to reconsider *655 its actions, either as to the desirability of its acquisition under the new circumstances or as to its financial ability to pay for same without State aid. This premise is clearly and succinctly enunciated in the city’s reply memorandum, on page 4: ‘ ‘ However the City has the absolute right to modify the city map and condemn petitioners’ land with or without financial aid from the State. In fact in the subject proceeding the City could now refuse state aid and proceed with condemnation.” The court agrees, but until such time as the latter event should occur the contemplated taking must be considered part and parcel of the State’s approval of the city’s application for aid under the Conservation Law. This does not, however, affect the city’s basic and constitutional right to acquire the property for public use, to wit, park purposes. Absolute power to acquire property is granted the city by section 381 of the New York City Charter, and as the condemning authority, it is the sole determiner of what property is or is not to be acquired so long as said property is to be used for a public purpose. Petitioners concede the public use and cannot be heard to question the legal right of the city to perform the actions precedent to the act of condemnation. If the city does not obtain State funds to partly pay the cost of acquisition and it decides to go through with the acquisition, then obviously it will have to pay the full cost with its own funds. If, on the other hand, the application of the city is ultimately approved, the State moneys will be available to the city. In either event the petitioners will be compensated and will suffer no loss or damage — and in fact will have suffered no wrong by the city.
The cases cited by petitioners are distinguishable. (Stahl Soap Corp. v. City of New York, 5 N Y 2d 200; Kaskel v. Impellitteri, 306 N. Y. 73; Cannata v. City of New York, 11 N Y 2d 210; Denihan Enterprises v. O’Dwyer, 302 N. Y. 451.) All of them deal with the power or right of the city to acquire the land for the purpose for which it was to be used. The city had that right only if the lands could meet certain standards specified in the particular law involved or if the lands were to be used for a particular purpose specified in the law, or for a public use. In the case at bar it is conceded that the subject lands are to be taken for park purposes — a public use — and that the city has the legal right to acquire those lands for such purposes.
The act of the City Council in approving the proposed acquisition of the lands for a public park is purely legislative in nature and not reviewable by the courts. The Conservation Law (§ 880, subd. 3) in requiring approval by the “ governing *656 body ’ ’ of the municipality obviously intends that such approval shall be in the nature of the legislative and not administrative act (see, also, General Municipal Law, § 6-c, subd. [1]; City Home Rule Law, | 10; New York City Charter, § 21). Should it be conceded that the City Council was not acting in a legislative capacity, the petitioners have no standing to question its action in this instance. It would appear that the purpose of requiring the governing body’s approval is to make certain that the municipality, by its local Legislature, wants the particular lands involved to be a park and that it wants State aid in the acquisition. It thejn becomes the State’s responsibility to determine, prior to the disbursement of any funds, whether the lands qualify pursuant to the “ Standards for acquisition ” set forth in the statute (Conservation Law, § 881, subd. 2, supra).
As to the State, petitioners seek to review the acts of respondents State Council of Parks and Harold G. Wilm as Conservation Commissioner of the State of New York, who have allegedly illegally approved; an application for disbursal of State funds in contravention of the provisions, requirements and standards of the State Conservation Law. If, as alleged, the lands do not qualify under that act, the approval is unlawful and the recommendation is arbitrary and capricious. Implicit in such recommendation and approval is a determination that the lands, which allegedly are fully developed and utilized for commercial purposes, are ‘ ‘ predominantly open and natural ’ ’ in character. (Conservation Law, § 881, subd. 2.)
Respondents contend that petitioners are barred from obtaining relief by the long-established rule of Doolittle v. Supervisors of Broome County (18 N. Y. 155), which has been followed in 'a long line of cases through the recent case of St. Clair v. Yonkers Raceway (13 N Y 2d 72, 76), viz., “ that the courts of this state have denied the right of a citizen and taxpayer to bring before the court for review the acts of another department of government simply because he is one of many such citizens and taxpayers.” In short, respondents urge that petitioners do not have the legal capacity to sue and cite the rule enunciated in the above cases. Although the dissenting opinion of Judge Finn in the St. Clair case is most persuasive in its rationale, there is no doubt that the settled and established rule of this State is: otherwise and must be followed until changed by judicial decision or legislative action. It is interesting to note that there is now pending in the State Legislature Assembly Bills Intro. Nos. 5362 and 5363. The first proposes to amend 7803 Civil Practice Law and Rules (art. 78 proceeding) to permit a person in a proceeding under section 51 of the General *657 Municipal Law to question any State body or officer allegedly disbursing State funds in violation of law or doing any other illegal act under color of official authority; the second proposes to add 7807 Civil Practice Law and Rules to provide that any five citizens of the State may maintain a proceeding against a State body or officer to prohibit the alleged illegal disbursing of State funds on the grounds of unconstitutionality or illegality.
Respondents, in their arguments and briefs, have consistently emphasized only one facet of the rule, as quoted above. It is both meaningful and significant to note that the rule more completely stated is as follows: “No private person or number of persons can assume to be champions of the community, and in its behalf challenge the public officers to meet them in the courts of justice to defend their official acts ’ ’ unless ‘1 their personal rights or pecuniary interest ” are affected and/or unless a “private interest of the plaintiffs has been invaded, and * * * injury peculiar to them is threatened.” (Doolittle v. Supervisors of Broome County, supra, pp. 158, 163.)
The principle is again enunciated in the case of Schief clin v. Komfort (212 N. Y. 520, 530) in the following language: “ The court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected. The rights to be affected must be personal as distinguished from the rights in common with the great body of people * * *. The assumption of jurisdiction in any other case would be an interference by one department of government with another department of government when each is equally independent ” (emphasis supplied). See, also, Bull v. Stichman (273 App. Div. 311, 316, affd. 298 N. Y. 516) where the court stated: “ From the reported decisions it clearly appears to be the established law of this State that an individual taxpayer is without capacity to maintain an action for a declaratory judgment to test the constitutionality of an act of the Legislature or the activities of State officers thereunder, unless his civil or property rights are specifically and particularly affected thereby.” (Emphasis supplied.)
To characterize these petitioners as mere citizens or taxpayers, with no more than the intangible and nebulous interest of a champion of the community, is to be unrealistic and to reason in a vacuum. The petitioners herein own the property to be acquired. They own and operate businesses on their properties and pursue a livelihood there. They are personally aggrieved by the alleged arbitrary recommendation and unlaw *658 fui approval of these respondents. They have real and abiding interests and rights which have already been affected and will continue to be further affected or possibly extinguished. The possible loss of petitioners’ property, together with the benefits of its ownership and, in some oases, petitioners’ businesses and the right to pursue a livelihood in those businesses, is at stake. Petitioners are not in any sense champions of the community, but, to the contrary, they are champions of their own personal, pecuniary and property interests which are allegedly being unlawfully invaded by the respondents. It is clear from the pleadings and the copies of the various reports and resolutions of the several city respondents attached to the pleadings that the map change and the proposed acquisition of petitioners’ lands have been made an integral part of and companion to the granting of State aid pursuant to the Park and Recreation Land Acquisition Act. The alleged unlawful recommendation and approval, if indeed they be unlawful, of these lands for the disbursement of State funds thus become in part the enabling and actual vehicles by which the lands will be taken in the instant situation, resulting in a direct loss and deprivation to the petitioners. The right to own property is a right that can only be abridged by the power of eminent domain when exerbised by the proper constitutional and legal authority. I can 1 perceive little or no difference between a taking without due process or legal sanction and one where due process is set in motion and the acquisition is to be accomplished by means of a companion and integrated alleged illegal act, viz., a violation of existing law by another.
Money compensation for the threatened loss and deprivation to the petitioners is not material to the sole issue here presented — the legal sufficiency of the petition.
Within the framework of the present situation, the city’s proposed taking of the petitioners’ property and the preliminary actions thereto are all predicated upon the State’s assistance pursuant to the. State Conservation Law. Should the city’s position change in the stream of future events by reason of its being denied State aid, by court action or otherwise, it is both reasonable and logical to assume that the city may reconsider its present plan of acquisition and alter its course, even to the point of abandoning the proposed taking, either entirely or in part. On the other hand, should the city proceed with or without State aid, the petitioners cannot be heard to complain of being wronged. As the situation is presently before this court, the petitioners are unquestionably more than citizens or taxpayers who are merely championing a public cause. *659 Petitioners demonstrate legal capacity to maintain this cause of action against the State respondents whose activities have ‘ ‘ specifically and particularly affected ’ ’ petitioners ’ ‘ ‘ special or peculiar interest in the matter other than that common to all taxpayers and citizens (Bull v. Stichman, supra, pp. 313, 316.) They are singularly persons whose “ civil, property or personal rights * * * are affected” and whose rights are unquestionably “ personal as distinguished from the rights in common with the great body of people.” (Schieffelin v. Komfort, supra, p. 530.)
The Federal cases cited by the respondents are markedly distinguishable. (Allied-City Wide v. Cole, 230 F. 2d 827; Alabama Power Co. v. lobes, 302 U. S. 464; Dube Power Co. v. Greenwood Co., 01 F. 2d 665, affd. 302 U. S. 485.) They deal solely with the propriety and validity of the loans being made to the municipality or other local government. The rule expressed in those cases would indeed be appropriate here if the city had in fact acquired the property for park purposes and was now making an independent application for State funds. However, that is not our case. As pointed out (supra) the city, by its own admission and actions, bespeaks any such independent action. It is indisputable that in its present state the map change and intended acquisition are indivisible from the allegedly illegal recommendation and approval by the respondents connected with the State of New York, thus making the acts of the latter the enabling and actual instruments by which petitioners’ personal rights are being affected and an alleged wrong committed against them.
To summarily deny petitioners the right to be heard on the issues raised by the allegations in the petition as to the State of New York respondents, in the face of the facts and circumstances here present, would combine “ violence to the democratic process ” with an avowal of belief in “ the last degenerate surviving fragment of the ancient belief in the divinity of kings. ’ ’
Although the Comptroller has not yet acted on the application now before him, petitioners’ right to be heard on the alleged illegality of the recommendation and approval necessarily carries with it the capacity to maintain their cause as against him, as well as the other State respondents.
In accordance with the foregoing, the motion of the respondents- Robert F. Wagner, as Mayor of the City of New York, Board of Estimate of the City of New York, City Planning Commission of the City of New York, Director of the Budget of the City of New York, Council of the City of New York, *660 and. Newbold Morris, as Commissioner of Parks of the City of New York, is granted and the petition is dismissed as to those respondents. The motion of the respondents, State Council of Parks, Harold G. Wilm, as Conservation Commissioner of the State of New York, and Arthur Levitt, as Comptroller of the State of New York, is denied.
The latter respondents may serve and file their answer to the petition within 10 days of the service of the order to be entered hereon. Pursuant to the understanding between the parties, the allegations raised in the petition, particularly in paragraphs 28, 31, 32, 38, 39, 40 and 43 of the second cause of action, and more particularly as to whether the subject property qualifies pursuant to section 881 (Standards of acquisition) of the Conservation Law, are set down for a hearing on April 9, 1964, or such other date as may be suggested by the convenience of the parties.