HENRY W. MITCHELL v. MARY BURWELL *et al.*, Appellants.

Miner's Labor Lien: LEASE. Code, section 3105, declares that miners shall have a lien on all property of the person owning or operating a mine, and used in its construction and operation, including both real and personal property, for the full value of their labor. An owner of coal land leased the same with the provision that the lessee should pay a royalty on coal mined, and that the new machinery and improvements which the lessee might add to the mine should not be removed until after the lessor should have a reasonable time to exercise his option to purchase the same. *Held*, that where the improvements equaled the value of miner's liens unpaid, the lienors were entitled to enforce their liens against both the mine and the improvements therein, though the owner

had failed to collect royalties amounting to nearly the entire value of the improvements.

CONTRACT AND STATUTE. Code, section 3105, giving a lien against owners and operators of coal mines for labor performed in opening and operating the same, together with a penalty and attorney's fees for enforcement of such a lien, enters into and becomes a part of a contract whereby one leases land to another for the purpose of being worked as a coal mine.

*Appeal from Boone District Court.*—HON. D. R. HINDMAN, Judge.

FRIDAY, DECEMBER 15, 1899.

ACTION in equity to recover sums alleged to be due the plaintiff for mining coal and other labor performed by himself and his assignors, and for penalties, attorney's fees, and costs, and to have established and enforced against the land in which the mining was done, improvements thereon, and personal property used in operating the mine, a lien for the amount due, and for general equitable relief. There was a hearing on the merits, and a decree for the plaintiffs. The defendants Mary Burwell and A. O. Burwell appeal.—*Affirmed.*

*R. F. Jordan* for appellant.

*Dyer & Stevens* for appellee.

ROBINSON, C. J.—Facts admitted or established by the evidence are substantially as follows: The defendants are the Eclipse Coal Company, B. J. Mallory, A. M. Norris, Mary A. Norris, Mary E. Burwell, and A. E. Burwell. On the 14th day of September, 1896, Mary Nutt, now the defendant, Mary Burwell, was the owner of a tract of eighty acres of land in Boone county, on which there was a coal mine. On the day specified she leased to the defendant Mallory the land, together with the coal-mining machinery, apparatus, shafts, entries, and improvements, for the term

of five years. As a consideration for the lease, Mallory agreed to pay a royalty of twenty-five cents on each ton of coal mined and dumped over a screen of a specified kind; to furnish lessor twenty-five tons of lump coal each year; to work, and develop the mine in a good, workmanlike manner; and to keep the machinery and buildings in good repair and working order. The lease also provided that: "New machinery and improvements and iron tracking that may be added by second party (Mallory) shall not be removed until first party has had an opportunity and reasonable time to purchase the same. If first party refuses to purchase the same, then second party may remove said improvements without further notice." On the fifth day of February, 1897, Mary Nutt entered into a contract in writing with Nellie Kintzley for the sale to the latter of the land. In June, 1897, the contract was assigned to the defendant A. M. Norris, and on the 1st day of September was assigned by him to F. A. Norris and the defendant Mary A. Norris. It was recorded in October of the same year, and F. A. Norris assigned his interest in the contract to Mary Norris on the 1st day of February, 1898. Mallory entered into possession of the premises under his lease, and improved and worked the mine. In June, 1897, he transferred the lease to the Eclipse Coal Company, which thereafter operated the mine under the management of Mallory. The lease was abandoned by Mallory and the coal company in January, 1898. The plaintiff and others performed labor in and about the mine in December, 1897, and January, 1898, for which they have not been paid. Co-employes of the plaintiff have assigned their claims to him, and he seeks to recover the aggregate amount due for labor performed by himself and his assignors, a penalty, and attorney's fees, and to have a lien therefor established and enforced, as already stated. The defendant Mary Burwell denies the alleged rights of the plaintiff to a lien, and claims that royalties to the amount of about nine hundred dollars were due

:her by virtue of the lease when it was abandoned, and that :her claim therefor is superior to any lien to which the plaintiff is entitled. She asks for such relief as is proper to protect her rights. The district court rendered judgment in favor of the plaintiff and against the coal company and Mallory for one thousand two hundred and forty-eight dollars and thirteen cents, a penalty of one hundred dollars, and an attorney's fee of three hundred dollars. The court also adjudged that the leased premises had been enhanced in value to the extent of one thousand four hundred and sixteen dollars and eighteen cents by reason of material furnished and labor performed by Mallory while operating the mine under his lease; that the plaintiff have a first lien on the land, the coal mine, and all property, both real and personal, used in the construction and operation of the mine, to the amount last stated. No relief was given to Mary Burwell.

The evidence shows that there is due the plaintiff, for himself and his assignors, the amount for which judgment in his favor was rendered, including penalty and attorney's fees. See section 2490 of the Code. The lien which he seeks is that for which section 3105 of the Code provides, as follows: "Every laborer or miner, who shall perform labor in opening, developing, or operating any coal mine shall have a lien on all the property of the person, firm, or corporation owning or operating such mine, and used in the construction or operation thereof, including real estate and personal property, for the value of such labor, to the full amount thereof, to be secured and enforced as mechanics' liens are." The chief contention of the appellants is that the plaintiff and his assignors were not entitled to a lien, under the section quoted, on property which neither the coal company nor Mallory owned. The record shows that the plaintiff and each of his assignors duly filed a statement for a lien for his claim substantially as required by the

mechanics' lien law, and notice thereof was served on Mary Burwell. The improvements made by Mallory and the coal company were an air shaft, an air course, and a side track. In addition five or more tons of iron were placed in the mine, and also numerous props and timbers of various kinds. The total value to the mine of the material furnished and improvements made was not less than the amount found by the district court. It will be observed that the lien established by the court, although on all of the land as well as the mine and personal property, was limited to the amount which the property had been increased in value by the improvements made by the lessees. We have no occasion to decide the rights of miners and others who perform labor for a lessee who added nothing, by improvements or otherwise, to the value of the leased premises, but merely diminished their value by removing coal therefrom. In such a case it would be a hardship, no doubt, for the owner to be compelled to pay the wages of the laborers, in operating the mine, perhaps to lose his royalty, and then to receive back the leased property at a diminished value. But that is not the case before us. Although the lessor has failed to collect royalties to which she was entitled, to the amount of nearly one thousand two hundred dollars, the value of the leased premises, as we have shown, has been enhanced to more than the amount of the plaintiff's claim. The statute expressly provides for a lien for labor performed in developing and operating a coal mine, upon all the property of the owner or operator of the mine used in its construction or operation. The lien was not designed to be limited to property of the operator of the mine which might be removed, or to improvments which he has made. If that were true, the lien would be ineffectual in most cases where the mines are leased, for the reason that the improvements of mines are largely of a value to the mine in which made, and not elsewhere. That is obviously true of air shafts and air

courses, and of material used which cannot be removed. Owners of mines who lease them do so charged with knowledge of the statute, which, to some extent, enters into and becomes a part of the contract. Chapter 47 of the Acts of the Twenty-third General Assembly, now merged in section 3105 of the Code, was in force when the lease in question was made, and authorized the relief which the district court granted as against the appellants. This conclusion finds support to some extent in the following cases,—decided, however, under other statutes: *Reynolds v. Black,* 91 Iowa, 1; *St. Paul Title Insurance & Trust Co. v. Diagonal Coal Co.,* 95 Iowa, 551; *Lambert v. Davis,* 116 Cal. 292 (48 Pac. Rep. 123). The entire tract of land in question was treated as an appurtenant to the mine, and nothing in the evidence tends to show that it was not. The evidence and the statute authorize the decree, and it is AFFIRMED.

GRANGER, J., not sitting.