T. J. TRACEY, Appellee, v. A. W. JUDY et al., Appellants.

**MINES AND MINERALS:** Lien—Agreement for Payment in Stock—
1  **Effect.** A miner who, under a contract with a lessee, opens a mine, is entitled to a lien on the land of the lessor to the extent that his work has enhanced the value of the land, notwithstanding the fact that the work was done under an agreement to receive part payment in corporate stock, which was never delivered.

**MASTER AND SERVANT:** Compensation—Agreement to Pay in Other
2  **Than Money—Refusal—Effect.** An agreement to receive corporate stock in payment of wages is converted into a money demand by a failure to deliver the stock.

**MINES AND MINERALS:** Lien—Mortgage—Priority. The lien of a miner on land for work in opening a mine thereon is superior to a mortgage given within the lienable period on the leasehold interest to one who had full knowledge of the work already performed.

**MASTER AND SERVANT:** Compensation—Non-money Agreement— Justifiable Refusal. A servant who agrees to accept corporate stock in a contemplated corporation in payment of his wages is justified in refusing the stock at a time when, without his consent, the corporation has become heavily incumbered by mortgage.

**PARTNERSHIP:** The Relation—Profit and Loss. Principle reaffirmed that an agreement to share in profits and losses is of the essence of a partnership.

**JUDGMENT:** Nature and Essentials—Non-party to Action. Personal judgment may not be rendered against one who is not a party defendant.

Headnote 1:  40 C. J. pp. 1170, 1172.  Headnote 2:  13 C. J. p. 587; 39 C. J. p. 189 (Anno.)  Headnote 3:  40 C. J. p. 1179 (Anno.)  Headnote 4: 39 C. J. p. 189 (Anno.)  Headnote 5:  30 Cyc. p. 380.  Headnote 6:  33 C. J. p. 1106; 40 C. J. p. 1185 (Anno.)

Headnote 5:  18 L. R. A. (N. S.) 1066; 20 R. C. L. 823.

*Appeal from Appanoose District Court.*—D. M. ANDERSON, Judge.

NOVEMBER 16, 1926.

Action to foreclose a mechanic's lien.  Relief was granted as prayed, and defendants appeal.—*Modified and affirmed.*

*C. H. Elgin,* for appellants.

*W. B. Hays,* for appellee.

ALBERT, J.—The defendant Ora Krapfel was the owner of a certain tract of land in Appanoose County during all of the time of the controversy herein. W. R. Krapfel was her husband. A. W. Judy, the other defendant, had a lease with the owner of the land, giving him certain rights of opening and conducting a coal mine on the property in controversy. At that time, Judy had met with financial reverses, and had nothing with which to open and conduct said coal mine, and he made a

contract with Krapfel, the husband, to advance him sufficient money to open this coal mine. This was done by Krapfel from time to time, and the advances amounted to between $15,000 and $20,000. He also made a contract with plaintiff and several other parties, who were practical coal miners, the substance of which was that they were to put down a shaft and open the mine. Plaintiff and the other miners were to receive the going wage, as fixed by the agreement between the coal operators and the miners' union, but each miner was to be paid $2.00 a day in cash, and the surplus of that day's wage over and above the $2.00 was to apply on three shares of stock (par value of each share $100), which stock the miner was to receive in a corporation which was later to be organized. A detailed reference to the contents of this contract, so far as material, will be made later. The shaft was completed sometime about the 1st of August, 1922. At this time, the tipple and superstructure were not built, nor was the air shaft constructed, nor any of the machinery installed. To each of the miners who thus assisted in the preparation of this mine was given a receipt, dated September 5, 1922, which receipts were identical, except as to names, and read as follows:

"Received of John Whitehouse $300.00 for labor for stock in Empire Coal Company. [Signed] A. W. Judy, Pres. & Mgr."

Later, the machinery was installed, the superstructure was built, and the air shaft was constructed in the summer of 1923.

In December, 1923, there was a conference among these parties, at which the question was discussed of organizing a corporation, and as to the amount of capital stock thereof. It seems to have been the consensus of opinion at that time that the capital stock of the corporation should be $50,000. At least there was no dissenting voice from fixing that amount as the capital stock. At the same time, it was discussed as to how soon the corporation was to be organized. One of the interested parties suggested that the organization of the corporation be deferred until later. There seems to have been no objection registered to such suggestion. Further than this, little seems to have materialized from this meeting. Most of the miners who helped to dig this shaft continued to work with Judy, who also worked in the mine. Prior to the December meeting, the books of the company were audited by a special auditor, and it was

found that there was a loss of about $2,000 in the operation of the mine up to that point. Parties who held these receipts for stock became dissatisfied, as a result of the showing made by the auditor, and in May, 1924, each of the miners filed a mechanic's lien in the office of the clerk of the district court of said county for the labor thus performed by him in opening this mine, and started this action to foreclose on said liens. The corporation was not completely organized until June, 1924, and as soon as it was possible thereafter, the three shares of stock provided for in said receipt were tendered to appellee herein.

Whatever other facts are material will be referred to as occasion may require.

The first question discussed is whether or not the appellee is entitled to a lien against the property of Ora Krapfel, the owner of the fee title. Section 3105, Code of 1897, provides as follows:

"Every laborer or miner who shall perform labor in opening, developing or operating any coal mine shall have a lien upon all the property of the person, firm or corporation owning or operating such mine, and used in the construction or operation thereof, including real estate and personal property, for the value of such labor, to the full amount thereof, to be secured and enforced as mechanics' liens are."

In construing this section, we have held that, where the digging and constructing of a coal mine add to the value of the property, the miner is entitled to a lien in an amount not exceeding the increase in the value because of the improvements made by the lessees. See *Mitchell v. Burwell*, 110 Iowa 10; *Rickabaugh v. Ferrick*, 198 Iowa 868. A lien was provided for appellee in his contract, and he testifies that he relied on both his contract lien and his statutory lien. The evidence in the case also shows that the construction of this mine added value to the real estate far in excess of the claims of these miners. The court therefore did not err in holding that appellee was entitled to a lien not only upon the mine and machinery, but also upon the real estate in question.

1. MINES AND
MINERALS: lien:
agreement for
payment in
stock: effect.

Appellant insists, however, that, under the contract between appellant and Judy, there could be no lien on either the land or the fixtures, because the contract in writing provided that they

were to be paid $2.00 a day in cash (which the evidence shows they were paid), and were to take the balance of their pay in stock of the defendant organization. He argues from this that appellee was not depending upon his lien, either statutory or contract, but had waived the same. This argument might be good, were it not for the fact that the contract itself provides for the lien until the stock was delivered, and. there is no waiver therein provided of the rights of the appellee to his statutory lien; and he testifies that he relied on both the statutory and the contract lien. We find no help for appellant in this contention.

It is next urged that, the contract herein sued on being for payment in property, no action would accrue until demand had been made, and refused by the payer (citing Section 3056, Code of 1897). Appellant's contention is right in his claim as to the force and effect of this statute, but the facts in the case show that repeated demands were made by the miner upon Judy for stock, and that no delivery was made. This is sufficient to meet the requirements of the statute, and thereby this contract was changed into a money demand.

2. MASTER AND SERVANT: compensation: agreement to pay in other than money: refusal: effect.

It is next urged that the mortgage given by Judy to Krapfel for $10,000 is junior to the rights of these appellees. The evidence in the case shows that, on the 5th of September, 1922, being the date of appellee's receipt from Judy for $300 work performed by appellee, Judy gave to Krapfel the aforesaid mortgage of $10,000 for money advanced by Krapfel. It is apparent, therefore, that the mortgage given by Judy to Krapfel was after the services had been performed by appellee, but within the time within which appellee could file his lien. This being true, the lien would take priority over the mortgage; but appellant seeks to escape this rule of law by pleading, and claims that the evidence showed that appellee was negligent in not filing his lien, and that Krapfel knew of and relied upon the existence of the contract by which the balance of the pay for services performed by appellee was to be made in stock of the proposed company, and that appellee failed to file his claim for a lien, and therefore is estopped from now claiming such lien. If Krapfel knew of the existence of the contract, he is bound by its terms; and as the contract provides for a lien for appellee, Krapfel knew this as

3. MINES AND MINERALS: lien: mortgage: priority.

well as any of the other provisions of the contract, and therefore cannot now be heard to claim the estoppel. In the second place, Krapfel is not shown to have changed his position to his detriment by anything that appellee did. Therefore, a plea of estoppel is not available to him.

Judy insists that he tendered the stock to appellee as soon as he organized the corporation, and that such tender was within a reasonable time, within the requirements of the law, and there-

4. MASTER AND SERVANT: compensation: non-money agreement: justifiable refusal.

fore appellee should be required to accept said stock. The trouble with this contention is that, when Judy organized this corporation and took over the property, it was heavily incumbered by the mortgage to Krapfel; and stock in a corporation with property heavily incumbered, as it was here, was not provided for in the contract between Judy and appellee. Had Judy tendered to appellee certificates of stock in a corporation in which the corporate property was not incumbered, we might have a different question.

It is further urged that, in fact, the relationship of Judy and the men who helped make this mine was that of partners. To make a partnership, there must be a mutual agreement or

5. PARTNERSHIP: the relation: profit and loss.

understanding between the parties to share in the profits and losses of the concern. The very history of this transaction shows that there was, in fact, no partnership existing.

The court entered judgment against the Empire Coal Company for the amount of appellee's claim and costs. It is urged that this is error. We think that the contention of appellant in

6. JUDGMENT: nature and essentials: non-party to action.

this respect is correct. The organization of the Empire Coal Company was not complete until sometime after this suit was commenced. The rights of Judy under the lease and all property connected with the coal mine were duly transferred to the Empire Coal Company at the time of its organization; and while, of course, it must take this property subject to the rights of appellee, the claim of appellee is wholly against the property, and not against the Empire Coal Company. It was not made a party defendant in this action, and no notice was served upon it. It must follow, therefore, that the court erred in entering this judgment against the Empire Coal Company for the claim of appellee herein.

Some other questions are discussed, but are not controlling in this matter.

The judgment of the lower court will be modified in accordance herewith, and otherwise is affirmed.—*Modified and affirmed.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.