FRANK M. HAZEN, Plaintiff, Appellee, v. ALBERT PENN et al., Defendants, Appellants, PENN COAL COMPANY et al., Defendants, Appellees.

No. 44575.

FEBRUARY 14, 1939.

Thomas J. Bray, for plaintiff, appellee.

Reed & Elick, for defendants, appellants.

Brunk, Janss & Bauch, for defendant, appellee, Blue Valley Coal Company.

Reed & Elick, for defendant, appellee, Penn Coal Company.

McMartin, Herrick, Sloan & Langdon, for defendants, appellees, Grover C. Hubbell and D. Cole McMartin.

HAMILTON, J.—Defendants Hubbell and McMartin are the owners of a certain quarter section of land in Marion county, Iowa, a portion of which is underlaid with coal. About August 20, 1933, they executed a lease to the defendants Penn Coal Company and Albert Penn giving said lessees the right to mine the coal underlying said land. In November 1935, the Penn Coal Company and Albert Penn subleased the coal to W. R. Sharader and Oscar Olson, who in turn, thereafter, assigned said lease to the defendant Blue Valley Coal Company, a corporation. This company undertook the development of mining operations and employed the plaintiff to do some drilling and to open a slope mine and to construct a tipple and track for use in the operation of said slope mine. Plaintiff, accordingly, constructed a tipple made from green poles cut from the timber and placed in the ground which were braced and fastened together by poles and 2x4's of native lumber nailed and bolted to the poles and, from the tipple, built a track or slope of railroad irons and poles and other material to the opening or mouth of the pit, a distance of 60 or 70 feet from the tipple. The entryway was dug into the ground a distance of 72 feet to the vein or layer of coal which entryway was timbered. Plaintiff performed labor for 89 days in the construction work and furnished part of the material, some of which was taken from plaintiff's timber and some was purchased. The time consumed included work on the slope and tipple and in the timber, getting out slope posts and cross poles, cutting and hewing the same

down, and putting them in place. The work was such as to necessitate the employment of a helper. Photographs of the layout indicate rather a crude, rough construction but there was evidence that the slope and tipple and construction were sufficient for the purpose intended. It was established by the plaintiff's testimony that the fair and reasonable value of the labor was $600; that he paid out cash for material amounting to $38; and that the improvement enhanced the value of the mining property $1,500. This was disputed by the appellants who produced evidence to the effect that the improvement was worthless and of no value to the mining property. The evidence shows that some of the coal on the premises covered by the lease could be taken by what is known as the strip method but, at the place where the slope was constructed, the overburden or thickness of the dirt and other material above the coal was too heavy to permit the operation of a strip mine by means of the limited equipment which the company possessed. About April 1937, the Blue Valley Coal Company, being in financial difficulty, made arrangements by which the company surrendered the lease to Albert Penn together with some buildings and certain coal which had been uncovered but not removed, Penn paying the company $200 and each of the parties canceling all claims against the other. Thereafter, on April 26, 1937, Albert Penn leased the property to Charles Riggen, operating under the name of Riggen Coal Company.

The record presents two questions: (1) What amount, if any, was plaintiff entitled to recover against the Blue Valley Coal Company? and (2) Was the mining property enhanced to the amount of the judgment which plaintiff was entitled to recover which would entitle him to the lien against the property owned by Penn and which was leased to Riggen with full knowledge of the plaintiff's claim for work and material?

We have carefully gone over the record and considered the briefs and arguments on file and reach the conclusion that it is largely a question of the weight and credibility of the testimony.

The trial court had the witnesses before him and was in a much better position to determine the weight and credit to be given to the testimony of each of the witnesses than is the appellate court. The able trial court prepared and filed in the case his ruling in writing, analyzing the testimony and making

application thereof, under the particular surrounding circumstances, and reached the conclusion that the plaintiff had sustained the burden of proof and was entitled to recover judgment against the Blue Valley Coal Company for $600 for work and $38 for materials furnished and he further found that the mining property had been enhanced in a sum equal to or more than the amount of said judgment and that plaintiff was, therefore, entitled to a miner's lien, under the provisions of Code section 10324, upon the mining property conveyed by the defendant Blue Valley Coal Company to the defendant Albert Penn and by the defendant Albert Penn to the defendant Charles Riggen doing business as Riggen Coal Company, which property is described in the decree, and judgment and decree was rendered and entered of record accordingly.

The only debatable question presented by this record is the question of the amount that the mining property was enhanced by the improvement constructed by the plaintiff. Appellant takes the position that the structure is entirely worthless and did not enhance the value of the property in any sum. In fact, Riggen testified that it would detract from the value and appellant also sustained his position by the testimony of a competent engineer who testified that the slope and tipple and other construction erected by the plaintiff would be entirely inadequate to carry on slope mining operations and gave it as his opinion that the value of the coal had not been enhanced a cent by the digging of the slope and the erection of the tipple.

The trial court, in analyzing the testimony bearing on this question, made the following finding:

"The next question is, is plaintiff entitled to a lien for this amount? He himself testified that his work enhanced the value of the property $1500, and his witness Lancey, a mine foreman, testified that he thought the reasonable value of the slope and tipple was $1500, and that in his judgment it added one thousand dollars to the value of the property.

"The defendant put Oscar Olson on the stand as a witness and he testified fairly, frankly and honestly. He did not testify in figures as to the enhancement in value by reason of the plaintiff's work, but it was apparent from his testimony that he felt that plaintiff had not been treated fairly and that he should have some compensation. .

"Karl Kastberg, a civil engineer of many years of experience, said that he examined the mine in October 1937, that he found a partially constructed tipple which in his judgment was inadequate and would have to be strengthened, the construction not entirely proper, and that he could not get down to the face of the coal because of the water. It ought to be said here that the plaintiff did open the slope back to the face of the coal. Charles Riggen, also a mine foreman, criticized the slope and tipple, and testified, as did Mr. Kastberg, that they added nothing to the value of the property and in fact were a detriment.

"James Wignall, a miner, testified that in his judgment the slope was properly built.

"I can well understand Mr. Kastberg's testimony; he is an engineer and testifies from an engineer's standpoint. The testimony introduced in evidence, the photographs, show that the tipple is rather a crude structure, but such structures are common around the smaller slope mines. The slope and tipple were built under Olson's direction and so far as the record shows they were entirely satisfactory to him. The plaintiff knew of the difficulties of Olson and the Blue Valley Coal Company, and there was talk between them that he would go ahead and get out coal and take his pay in coal. The tipple is built, the track is built and the slope is open to the face of the coal, and while the coal cannot now be reached on account of the water, yet nothing remains to be done except pump out the water, and so far as the record shows coal can then be removed. It may be that Mr. Riggen, who is accustomed to operating larger mines with larger machinery, does not approve of this work, but that does not detract from the fact that the work has been done and the coal reached, and when the water is pumped out coal can be removed."

This statement of the trial court sounds fair, reasonable and logical and is, we are convinced, in accordance with the weight of the testimony. There is and can be no dispute about the law. Code section 10324 provides:

"Every laborer or miner who shall perform labor in opening, developing, or operating any coal mine shall have a lien for the full value of such labor upon all the property of the person, firm, or corporation owning or operating such mine and used in the construction or operation thereof, including real

estate and personal property. Such lien shall be secured and enforced in the same manner as a mechanic's lien.''

This statute has been before this court for construction in several cases and the principle is well established that where the construction of the improvement for which a lien is asked adds to the value of the property the miner is entitled to a lien in an amount not exceeding the increase in value because of the improvements made by the miner. Mitchell v. Burwell, 110 Iowa 10, 81 N. W. 193; Rickabaugh v. Ferrick, 198 Iowa 868, 200 N. W. 315; Ford v. Dayton, 201 Iowa 513, 207 N. W. 565; Tracey v. Judy, 202 Iowa 646, 210 N. W. 793.

After a careful analysis of the entire record, we find no justification for disturbing the decree of the trial court. The case is accordingly affirmed.—Affirmed.

All JUSTICES concur.