JOHN A. HENNEY, Appellee, v. LAVERNE LAMBERT et al., Appellants.

No. 46709.

JANUARY 8, 1946.

L. E. Powers, of Denison, for appellants.

Floyd E. Page, of Denison, for appellee.

BLISS, C. J.—The plaintiff owned a 320-acre farm in the west part of Crawford county, on which he was born and reared and which he farmed for several years. It consisted of the NW¼ and the E½ of the NE¼ of Section 32, and the E½ of the SW¼ of Section 29, lying immediately north. A road separated the 80-acre tract from the 240 acres. It was a mile across both east and west and north and south.

It was a hill farm. The 240-acre tract, in particular, was a succession of hills and intervening draws, the latter being cut by ditches. The tops and sides of the hills had been eroded down to the clay subsoil. It was not a good farm in several respects.

The husband of the defendant Edith Lambert had died about 1933, and she and the children had continued as tenant farmers. On October 9, 1941, the plaintiff leased this farm, by written lease, to Mrs. Lambert and her son LaVerne, who had just reached manhood. The term of the lease was from March 1, 1942, to March 1, 1943, and later, by agreement, was extended for another year. Just what knowledge defendants had of the farm does not appear. It was apparently fenced when the lease was executed. Bernhardt Schmieder was the tenant. He testified:

"Fences was poor. I took some fences with me. All of the fences was mine. All of the wire. I had the electric fences and of course, I moved them. * * * Q. So that the tenant that came after you didn't have any fences? A. There was outside fence."

There were no cross-fences of any consequence. The plaintiff furnished six spools of barbed wire.

Like many printed leases this lease stipulated numerous obligations for the tenant but few, if any, for the landlord. It was a harsh lease, particularly because of the lack of fencing, for the defendants. Among its provisions we note:

"Second party [tenant] further agrees to faithfully and properly guard and protect said premises and crops thereon * * * from all damage by * * * depredation of animals * * * A failure * * * to comply with any of the stipulations of this lease by the said second party * * * or a failure of the tenant to farm the land in good farmer-like manner, shall mature the notes given for rent and shall authorize the said first party to consider the lease forfeited, without any demand for rent upon the premises or elsewhere, and he may take possession of the premises without notice and without process of law * * * A failure to pay any portion of the rent as the same becomes due shall mature the whole amount

of rent. * * * No repairs will be made by the lessor, except as hereinstated [none are stated], and it is agreed that the lessor shall not be liable for any damages to crops, though such damage might have been prevented by proper fencing."

However, we are not reviewing the case de novo but on assignments of error. The signatures of the defendants are on the lease and there is no claim or showing that they were procured by misrepresentation.

Plaintiff on January 17, 1944, filed his petition in equity in four counts. In count one it was alleged: That under the lease defendants were required to pay $110 cash rent on January 1, 1944, and to give as further rental one half of all corn (shelled) and two fifths of all small grain raised during the year, delivered to market free of charge to plaintiff; that defendants raised to maturity 133 acres of corn, averaging 50 bushels per acre, one half of which, or 3,325 bushels, was due the plaintiff; that defendants converted plaintiff's share of the oats, being 65 bushels worth $39; that defendants have harvested said corn crop, have allowed their livestock to consume a considerable amount of the corn in the field, have been and are feeding the harvested corn to their livestock, and have sold approximately 400 bushels without the consent or knowledge of plaintiff; that defendants have failed, neglected, and refused, though demanded, to set off to plaintiff his full one-half share of the corn, or 3,325 bushels, of the value of $3,391.50, or $1.02 a bushel; that defendants have not paid the cash rent or the value of the oats; that plaintiff had a statutory landlord's lien and the suit was to recover rent accrued within the previous year. On count one plaintiff asked judgment for $3,474 and the issuance of a writ of landlord's attachment.

In count two plaintiff asked for foreclosure of his contract lien. In count three he asked judgment for $80 for the conversion of 100 bushels of the 1942 corn crop belonging to him. In count four plaintiff asked for a receiver.

On May 22, 1944, defendants filed answer and counterclaim. In answer to count one defendants deny that they raised 6,650 bushels of corn but admit that they raised and harvested 4,180 bushels, and that this corn on the date of

the filing of plaintiff's petition was on hand or disposed of as follows:

| | | |
|---|---:|---|
| Single crib | 1,500 | bushels |
| Wire crib with cover | 830 | bushels |
| Piled in pasture | 800 | bushels |
| Another pile | 550 | bushels |
| In hog house and fed | 337 | bushels |
| Sold to obtain cash for farming purposes | 130 | bushels |
| Delivered to Hannigan for corn borrowed | 33 | bushels |
| Total | 4,180 | bushels |

They further allege that all this corn had been measured by wagon-box measure; that as soon as it was all harvested they notified the plaintiff of that fact and invited him to come to the farm to assist in dividing it but he refused and at once came out with the sheriff and levied an attachment on all of the corn and all of the personal property of defendants; that plaintiff had never given any directions to defendants as to the place to deliver his corn to market, and by attaching he made such delivery impossible; that they had set aside for plaintiff 2,090 bushels, or one half of all corn raised in the wire crib with a top, and in the two piles above noted, and owed him no other corn rental; they admit the value of the oats taken and the amount of the cash rent and the $80 for the 1942 corn, but aver that these sums are offset by services rendered plaintiff in constructing a bridge to the value of $150, in preparing alfalfa ground, $45.50, grading yard, $35, hybrid seed corn, $66.66, staples, nails, etc., $1.65, for a total amount of $298.81, as alleged in their counterclaim. Plaintiff conceded that he owed defendants for the seed corn and staples but denied liability on the other items of the counterclaim.

On motion of defendants the court transferred counts one and three to the law side and trial was had thereon to a jury in June 1944, which allowed plaintiff $2,874.37, less a credit to defendants for the last two items of the counterclaim of $62.15, and returned a verdict for plaintiff of $2,812.22. The receivership was denied. In overruling defendants' motion for

a new trial, the court, in analyzing the jury's findings and verdict, stated that it was apparent that in arriving at the verdict of $2,812.22 the jury had included $166.85, being $229 (the total of the conceded cash rent of $110, the oats, $39, and the 1942 corn, of the value of $80), less a credit of $62.15 for the hybrid seed corn, staples, etc., owing by plaintiff. Deducting this sum of $166.85 left $2,645.37 as the amount allowed for the value of one half of the corn crop. We find no fault with the trial court's computation. Nothing was allowed defendants on their counterclaim except the item of $62.15. The only testimony on the market value of shelled corn placed it at $1.02 a bushel. Dividing $2,645.37 by $1.02 shows that one half of the corn crop, as found by the jury, was 2,593½ bushels, or a total crop of 5,187 bushels. This would make an average yield of 39 bushels per acre for the 133 acres planted to corn. The average yield per acre in 1940 and 1941, while Schmieder was a tenant, was a little more than 40 bushels, and in 1942, when the defendants were on the farm, it was about 45 bushels.

The following matters of fact have support in the record and throw some light on the errors assigned: Plaintiff first came out to the place about October 7, 1943. He found the defendants' hogs—about 50 or 60 spring pigs weighing about 100 pounds each—feeding in the cornfields. During the next two or three days he built a yard to confine the hogs and thereafter they were quite effectively restrained. He estimated that they had eaten three or four acres of corn in the field. At that time LaVerne Lambert was husking only enough corn for feeding. But he and a younger brother then began harvesting the corn. LaVerne was suffering from attacks of appendicitis and his doctor advised him to have an operation at once but he continued working as much as he was able. He borrowed a corn picker and picked about 25 or 30 acres, but it was difficult to use a tractor because of the hills. Because the machine was not getting all of the corn he did not use it any more. Plaintiff was next at the farm on December 15th. He found no one at home. He went out through the cornfields and estimated that about 55 acres had been husked. The only

husked corn on the place was in the single crib and he estimated that it contained only about 1,300 bushels.

LaVerne's brother Max returned from the Army and in late December he and the other brothers helped with the cornhusking. On December 27th plaintiff and a friend came to the farm. There was not a great deal more corn husked than there had been on the 15th. Plaintiff asked if any corn was being set aside for him and LaVerne told him there was some out in the field. Plaintiff then inquired if he should hire men and teams and husk it, and LaVerne told him to keep his "blankety blank mouth shut" as he had the place rented until March 1st. At times plaintiff saw horses and cattle in the cornfields but did not know whose they were. He saw evidences of corn having been eaten in the fields by livestock other than hogs. On December 29th plaintiff came out with three men, who were farmers, or had been, and they went over the five or six cornfields to estimate what the yield per acre in them was. He was getting ready for a lawsuit. Some fields were completely husked and some in part. One field had been husked by the corn picker. Sometime after they had been there they were discovered by Mrs. Lambert and she asked one of the boys to find out who they were and what they were doing. On discovering that the plaintiff was one of them he was called to the house where the defendants and three more of the Lambert boys were. Plaintiff testified that one of them slapped him and the returned soldier gave him a verbal "going over," and said to him, "You think you are going to get beat and you are going to get beat." He was told by them that they could not divide the corn until it was all husked and that how it was divided would depend on what they did with it. The defendants and two of the brothers were witnesses. They testified that no one struck the plaintiff but they told him they were not going to see their mother imposed upon and that the corn would be divided when it was all husked.

On January 14th Mrs. Lambert first called plaintiff and asked him to come out as they were going to divide the corn. He told her he could not come. One of the boys then called plaintiff but he refused to come. There was not sufficient crib room on the farm for all of the corn and plaintiff was aware of

this. Some of his 1942 corn was cribbed and sealed on the farm. It was necessary that some of the corn be piled on the ground. They then set apart plaintiff's half of the corn and arranged with the operator of a corn sheller to shell the corn the following week. The operator was a witness and testified that this arrangement was made and the defendants later told him the corn had been attached. Plaintiff testified that as soon as he was told that the corn was all picked, and on the 15th or 16th of January, he began the lawsuit. On January 17th the sheriff levied upon "4,000 bushels of ear corn; 6 shorthorn milk cows; 7 head of horses; 40 head of spotted pigs"; and various farm implements, all of which he left in the care of the defendants and they fed the stock out of their share of the corn.

The corn on the farm was planted in six irregular fields. Two of these had 15 acres each and four of them had 31, 17, 8, and 46 acres, respectively. The plaintiff and the three men who had examined the stalks in the various fields on December 29th testified that they estimated the average yield per acre in all of the 132 acres at 51 bushels to the acre. A number of witnesses for defendants testified to the poor quality of the soil, particularly on the sides and tops of the hills, and the light yields at those places. The defendants made no motions to direct a verdict nor for judgment notwithstanding the verdict.

I. Defendants' first assigned error is based upon the admission of certain testimony. Plaintiff was asked whether he had inspected a certain field of corn and whether he found the hogs had broken down the corn and eaten the ears. Defendants' objection that it was incompetent, irrelevant, and immaterial to any issue in the case was overruled. The answer was that three or four acres of corn were found to be practically destroyed.

The second and third errors assigned were similar in every respect to the first error except that the questions referred to other fields of corn. The objections were also amplified to include the incompetency of the witness and that the questions called for incompetent conclusions and opinions.

There was no error in these rulings. It was the claim of the plaintiff that his share of the corn was diminished because defendants had permitted their livestock to eat the corn in the field. The answers called for were material on this issue, and though the answers were opinions, they were competent and the witness was qualified to give them.

II. The fourth error is a complaint against asking LaVerne Lambert whether he had plowed a furrow around the corn piled on the ground. Defendants objected that it was incompetent, immaterial, and irrelevant to any issue. The objection was overruled and the witness answered that he had not, as he expected to shell the corn the following week. The objection might well have been sustained but there was no prejudice to defendants in overruling it.

III. The fourth error had to do with the counterclaim. Plaintiff admitted that defendants had helped him in constructing a bridge but claimed that he had paid them by doing an equal amount of work for them in return. Defendants objected to his answer that he had so repaid them as an incompetent conclusion and opinion and invading the province of the jury. There was no prejudicial error in the admission of the testimony.

IV. The sixth error assigned is based upon count three of plaintiff's petition, which was an allegation that defendants had converted to their own use corn from plaintiff's share of the 1942 crop, stored on the farm, to the value of $80. Defendants admitted that they had fed the corn and had not paid for it and conceded the plaintiff's right to recover that amount. Defendants complain that plaintiff had no landlord's lien for the value of the corn and that it was error to permit a verdict and judgment on a claim for rent aided by a landlord's writ of attachment. It may be conceded that plaintiff had no such lien, but the liability is admitted and the verdict and the judgment are in no way invalidated because the amount of that item is included therein. Whether the amount of this item can be collected by enforcement of the lien is not before us. Indeed, the plaintiff insists, and perhaps rightly, that under the instructions of the court the jury allowed nothing on count three.

V. The eighth assignment of error complains that the verdict of the jury is excessive and the result of passion and prejudice. In landlord-and-tenant cases the contention usually is that the passion and prejudice, if any, are against the landlord. We would not be justified in interfering with the verdict on the ground urged. There was conduct by both plaintiff and defendants which was subject to censure. The yield of corn found by the jury was much less than contended for by plaintiff, and considerably greater than what defendants said they raised, and was somewhat less than the yield per acre in the years 1940, 1941, and 1942. The assignment is without merit.

VI. The ninth error is that the jury erred in fixing the amount of recovery. What we have said in Division V also answers this contention.

VII. The tenth error complains of the overruling of grounds three and seven of defendants' motion for new trial. The first paragraph of ground three alleged that there was no evidence, of any competency or probative value, to warrant the finding of the jury of the amount of corn raised. It is our conclusion that the plaintiff and his three witnesses who examined the fields of corn were qualified to estimate the yields and that their testimony was material and competent and its probative value was for the jury.

The second and third paragraphs in ground three of the motion for new trial are as follows:

"There was no evidence that the plaintiff was the owner of any corn in the possession of the defendants, at the time of the alleged demand on the defendants to deliver corn to him, and no evidence from which a jury could find that a failure to deliver corn in response to said demand constituted a conversion.

"There was no evidence that the plaintiff made a demand for his corn at a time when he had a legal right to make such demand, and no evidence that such demand was not complied with, within a reasonable time under the circumstances."

Ground seven of the motion is as follows:

"Because the petition of the plaintiff does not state facts sufficient to constitute a cause of action in that it does not state facts showing the plaintiff had any property interest in the corn described in the petition which could have been converted by the defendants and does not state any conduct on the part of the defendants which would constitute a conversion of said corn. The corn was all the property of the defendants, subject only to a lien in favor of plaintiff until plaintiff's share was set aside to him. The defendants had a reasonable time after harvesting the corn to set aside plaintiff's share. No cause of action for conversion could arise immediately on the completion of the harvest."

There is no basis for defendants' contention that plaintiff's action is one against the defendants for their conversion of corn on which plaintiff had a landlord's lien. His action is simply a suit on a contract for the recovery of rent, aided by a landlord's attachment. The basis of plaintiff's action as alleged in count one of the petition is that defendants raised 6,650 bushels of corn, and that they "have failed, neglected and refused to set off to the plaintiff his full one-half share" thereof. By amendment to the petition it was alleged that plaintiff's demand to set off his share was refused.

The lease did not require the defendants to "set off" to the plaintiff his share of the corn on the farm, or to set it apart, in cribs or otherwise, on the farm. With respect to the disposal of the landlord's corn by the tenants, the only provision in the lease is as follows:

"The second party agrees to pay to the first party one hundred ten ($110.00) on or before January 1st, 1943 [1944] cash rent and a share of the crops as herein stated. That is one half of all the crop raised on ground planted to corn * * * Second parties agree to shell the corn and deliver first parties share of the corn * * * free of all cost to first party, at or to any market first party may designate * * * ."

The plaintiff neither alleged nor proved a breach of this provision of the lease pertaining to the corn rental. There was no demand that the corn be shelled. By attaching the

corn the defendants were prevented from either shelling it or delivering it to market. There was no evidence that plaintiff ever designated any market to which the corn should be delivered. There was no definite time for delivery of the corn provided for in the lease. It was to be delivered when the plaintiff designated the marketing place, This necessarily called for a demand from the plaintiff before the defendants were required to comply with the quoted provision of the lease. Section 9443 of the 1939 Code provides that no cause of action shall accrue upon a contract for the delivery of property other than money until a demand of performance has been made upon the maker and refused, or a reasonable time for performance thereafter allowed. This section applies to the delivery of crop rent where the time of performance is not definitely fixed in the lease, or made definite as provided therein. Johnson v. Shank, 67 Iowa 115–118, 24 N. W. 749; Warner v. Shaffer, 152 Iowa 565, 567, 132 N. W. 964; Howard County v. Kyte, 69 Iowa 307, 309, 28 N. W. 609, 610. In the last-cited case, the court said:

" * * * and the tenant is in no manner in default until he refuses to deliver the share of the grain in compliance with his contract."

However, the defendants did not present this issue or defense in any way to the court for ruling thereon. The case was tried upon the theory of recovery alleged and adopted by the plaintiff in count one of his petition. In their answer defendants alleged that plaintiff never advised them where to deliver his share of the corn to market. They offered no proof of this allegation. They also alleged that they were prevented from delivering the corn by the attachment, and, having moved from the farm, were under no obligation to deliver it to market. They took issue with plaintiff's allegation that they had refused to set off plaintiff's share of the corn, and alleged that they had set aside to plaintiff one half of the corn raised, or 2,090 bushels, which corn became the property of the plaintiff, and they owed him no additional corn. Evidence was offered by defendants in support of their allegation that they had set aside plaintiff's share of

corn and plaintiff offered testimony that his demand to have his share set aside to him was refused.

The court instructed the jury on this theory of the case, as pleaded by the parties, and which they supported by evidence. In instruction No. 7 the jury was told that to entitle plaintiff to recover he must establish that defendants raised 6,650 bushels of corn, or some part thereof, and that prior to the commencement of the case he demanded that the defendants set off and deliver to him on the premises his one-half share of the corn so raised, and that the defendants refused to and did not so set off and deliver said corn on the leased premises. The same thought was repeated in instruction No. 8.

There was evidence that plaintiff had demanded that his share of corn be set aside on the farm and it was for the jury to determine this issue of fact. Defendants state the law to be that a landlord has no ownership in, title to, or control over his rental share of the crop until it is set aside to him by the tenant, and that up to that time the legal title is in the tenant and the landlord is but a lienholder. This may be conceded. See Blake v. Coats, 3 (G. Greene) Iowa 548; Rees v. Baker, 4 (G. Greene) Iowa 461; Frederick v. Remking, 4 (G. Greene) Iowa 56; Townsend & Knapp v. Isenberger, 45 Iowa 670; Howard County v. Kyte, supra, 69 Iowa 307, 28 N. W. 609; Riddle v. Dow, 98 Iowa 7, 66 N. W. 1066, 32 L. R. A. 811; In re Estate of Grooms, 204 Iowa 746, 752–755, 216 N. W. 78; Pierre v. Pierre, 210 Iowa 1304, 1310, 232 N. W. 633; Rodgers v. Oliver, 200 Iowa 869, 872, 205 N. W. 513. In Wilson v. Wilson, 220 Iowa 878, 882, 263 N. W. 830, 832, the court said:

"It is well settled that in the absence of a contrary agreement, rental is neither earned nor payable until the expiration of the term, or in any event rental is not due prior to the customary time of paying the same."

However, it is not necessary that we pass upon these matters or determine just the nature of, or extent of, the landlord's interest in his crop rental. Because, even though plaintiff had no title to or ownership in his corn rental at

the time he demanded that his share be set apart, this would not render nugatory his demand. It is only when the crop share is not set apart to the landlord that a demand to do so ever becomes necessary.

Whether the defendants had complied with the demand was also a question for the jury. It was admitted in the answer and testified to by LaVerne Lambert that they had set aside but 2,090 bushels of corn for the plaintiff, and it was for the jury to say whether this was one half of the corn raised. There is no merit in the tenth error assigned.

VIII. Defendants' seventh assignment of error is based upon exceptions to instructions Nos. 7 and 8½, the overruling of ground four of motion for new trial, and the refusal of a requested instruction. In instruction No. 7 the court, after stating what the plaintiff must establish to entitle him to recover, said:

"And if the plaintiff· has established each and all of the matters as to which the burden of proof is so upon him you will find for the plaintiff upon the claim made by him in Count One of his petition *for the value of one-half of the corn raised by the defendants * * *.*" (Italics ours.)

Instruction No. 8½ is as follows:

"It is the claim of the defendants that they set off and delivered to the plaintiff 2,090 bushels of corn alleged to be the full one-half share of the corn raised by them on the leased premises during the year beginning March 1, 1943. In this connection you are told that if the corn stored in the wire crib with roof, a pile in the pasture and a pile referred to in the evidence as the south pile was set off to the plaintiff and constituted a one-half share of the corn * * * you should find against the plaintiff on his claim for the value of a one-half share of the corn. If the corn so alleged to have been set apart and delivered by the defendants in the crib and piles above referred to was less than a one-half share of the corn raised, *defendants are not entitled to any credit therefor on the plaintiff's claim for the value of a one-half share of the corn raised, and the jury will determine the*

*case as though no corn had been set off and delivered to the plaintiff.''*

Defendants excepted to these instructions, as follows:

''Come now the defendants, before the instructions are read to the jury, and except to instruction No. 7 on the ground that it does not permit the jury to deduct from the one half of the corn which they may find was raised on the farm the amount which the jury may find the defendants set aside for the plaintiff, and permits and requires the jury to return a verdict in favor of the plaintiff, even though they may find that the corn which the defendants set aside to the plaintiff was the plaintiff's full one-half share.

''The defendants further except to instruction 8½ because it permits the jury to credit upon the amount due the plaintiff the amount which the jury may find was set aside to the plaintiff by the defendants only in the event they find the amount so set aside was the plaintiff's full one-half share. Whereas the defendants contend that the jury should be permitted to find the amount of corn which the defendants set aside for the plaintiff and should permit the jury to award to the plaintiff the reasonable value of any corn to which he might be entitled in excess of the amount so set aside.''

The court overruled these exceptions.
Defendants requested this instruction:

''Plaintiff claims that there was raised on the leased premises during the crop season of 1943, 6,650 bushels of corn. The defendants claim that the amount of corn raised on the leased premises was 4,180 bushels, and that the defendants have set aside for the plaintiff, 2,090 bushels in cribs and piles described as follows: A wire crib with roof, a pile in the pasture and a south pile. If the plaintiff has established that the defendants raised on the leased premises 6,650 bushels of corn, or some part thereof, one-half of which would be in excess of what you may find, if any, the defendants have set apart for the plaintiff, as stated in their answer, you

shall allow the plaintiff the reasonable value of such excess if any.''

The instruction was refused and instruction No. 8½ was added to the instructions.

Ground four of defendants' motion for a new trial was as follows:

''Plaintiff had no legal right to convert a crop share lease into a cash lease. He should be required to accept the corn which the defendants set aside to him. Any legal right which he had, would be for an excess over what was set aside to him, if there was any such excess. Stated differently, the defendants had a legal right to set aside the landlord's share of the crop and to receive credit for the amount thus set aside, and there was an error at law in failing to so advise the jury.''

In overruling defendants' motion for new trial the court expressed its view of this contention as follows:

''My understanding of the theory upon which the case was tried and submitted, so far as the claim for rent for the corn land is concerned, was that if there was a sufficient demand by the plaintiff that the defendants set off to him a one-half share of the corn, and a refusal by the defendants to so set off to the plaintiff a full one-half share of the corn, the plaintiff's right under his lease to receive corn as his rent for the corn land was changed into a money demand for the value of half the corn. Tracey v. Judy, 202 Iowa 646.''

We do not disagree with the rule followed in the case cited by the trial court, as applied to that case, but we question that it is a fair, sound, or correct rule as applied to this case or similar cases. We think there is merit in the complaint of the defendants. The parties had entered into a crop-share lease. The plaintiff was entitled to the stipulated crop share. If he did not get it he is entitled to recompense. But in giving him recompense the obligations, duties, and rights of the parties to the lease should be disturbed only so much as is reasonably necessary to do so. Completely converting a crop lease into a cash lease may impose burdens

and disadvantages upon the tenant. They should not be increased any more than necessary. All the landlord is entitled to is compensation. The tenant is required to give that but he should not be further penalized. If the tenant has partly performed his contract, particularly if it be substantially, the landlord should be required to accept that part and recover only for what is lacking. This is particularly true where what the landlord is to receive is grain, measurable by the bushel, pound, or severable quantities. He is not injured but is fully compensated when he receives what is set aside to him and a judgment for any deficiency. Corn may be and often is of various grades. All the landlord is entitled to is a share of the corn raised on his farm, of whatever grade it may be. There may be some uncertainty in ascertaining the market value of the particular grade. The landlord ought not be permitted to reject a substantial portion of his share, which the tenant is forced to retain, and then recover judgment at the market price for his entire share.

We think the instructions excepted to were not sound law and that the theory of the requested instruction should have been given.

We are not convinced, however, that prejudice resulted which justifies a reversal. All of the corn on the farm on January 17, 1944, was attached and was held to be subjected to the payment of the judgment. There is nothing to indicate that the market value per bushel awarded by the jury for the corn which was not credited in arriving at the verdict was any greater than what was received for this corn when sold under writ. Something was said in oral or printed argument about deterioration of the uncribbed share set aside to the plaintiff, which would not have occurred had he taken this corn and it had been shelled, as provided under the lease, in January 1944. There is no evidence of any loss by reason of the deferred marketing. It is stated in plaintiff's argument, and there is no reply, that, "After the property was attached, earnest efforts were made by counsel for both sides to have the appellants enter into a stipulation providing

for the sale of the corn and the holding of the money, pending the termination of this case. No such stipulation was ever entered into * * *."

It is our conclusion that there is no prejudicial error, and that the judgment should be, and it is—Affirmed.

OLIVER, HALE, WENNERSTRUM, GARFIELD, MANTZ, and MULRONEY, JJ., concur.

MILLER and SMITH, JJ., concur in result.